**Melson Estate**

*Joseph H. Grubb, Jr.,* and *Grubb, Guest & Littleton,* for accountant.

*Charles F. Nahill,* amicus curiae.

*Ralph M. Barley,* for substituted trustee.

*F. Lyman Windolph, John B. Rengier* and *Harry J. Gerber,* for claimants.

*Lois G. Forer,* for Commonwealth.

LEFEVER, J., March 12, 1962.—Mary C. Melson died July 11, 1934, leaving a will dated May 14, 1909, and codicils thereto dated June 15, 1912, March 15, 1929, October 23, 1930 and November 3, 1932, respectively, which were duly probated in the Office of the Register of Wills of Philadelphia County on August 7, 1934. . . ..

In the tenth and eleventh paragraphs of testatrix' will, "after the death or remarriage" of her husband, (and he predeceased her), she left her residuary estate to her trustees for the purpose of erecting and establishing "The Jacob M. Long Memorial Home" in Lancaster, Pennsylvania, or its suburbs as "a charitable home for worthy persons of means insufficient for their comfortable maintenance and support." In

the eighth paragraph of her will, testatrix also gave the property 14-16 North Queen Street, Lancaster, to the trustees of the Jacob M. Long Memorial Home.

. . .

By adjudication, dated September 20, 1950, Judge Klein adopted in the main the adjudication drafted by Judge Ladner prior to his elevation to the Supreme Court of Pennsylvania. Therein, the balances of principal and income amounting to $83,699.65, with any additional collections of income, were awarded back to John Shahedy, trustee, for the establishment and maintenance of The Jacob M. Long Memorial Home, subject to the payment of $10,000 as provided in an agreement, dated June 26, 1950, to certain next of kin of decedent. Recognizing that some 16 years had elapsed since testatrix' death and that the trustee had not yet founded and established the charitable Home, the court ordered the trustee to report the plans and intentions of said trustee for the erection of a Home, the estimates of cost, operation, maintenance, etc., "all to be first reported to this Court within a period of six months." The adjudication further recited that "if need be, the Court might necessarily appoint an Amicus Curiae, with powers of a Master, to take testimony and formally report his findings and recommendations in respect to the establishment of said Home and/or the application of the funds under the doctrine of cy pres to some worthy and qualifying institution already established which meets with or approximates the charitable intents and purposes of the testatrix. These latter provisions are now referred to by the Court in that it is not unmindful that the maintenance and operation of a charitable Home today, especially in view of rising costs of materials, costs of living, etc., is a stupendous task."

On June 21, 1951, the present auditing judge (Judge Ladner's successor), not having received any

report from the trustee, John Shahedy, concerning his plans and intentions for the erection of the home, etc., appointed Charles F. Nahill, Esq., amicus curiae, with the powers which are more specifically set forth in the decree of his appointment.

The amicus curiae held extensive hearings and ultimitely filed a report in which he concluded, inter alia, that the proposed plans of the trustee to establish and operate a home, such as were set forth in the testatrix' will, were unworkable and unfeasible; that none of the claimant charitable institutions who appeared before him were qualified to receive the fund under the doctrine of cy pres for the reason, inter alia, that, except for Christ's Home, the claimants accepted only women as guests, whereas testatrix' will provided for "worthy persons", which the amicus curiae construed to mean both male and female guests; that Christ's Home, located in Paradise, Lancaster County, Pennsylvania, was used exclusively for the care and maintenance of children; and that the identity of the Melson bequest would be lost if the income from the fund were awarded to any of the claimants. The amicus curiae recommended that the court, under its power of cy pres, award the income from the testatrix' estate for a temporary period of five years, one-half to the Henry G. Long Asylum and the other one-half to the Ann C. Witmer Home, for the care of guests not now residing in either of said homes; that such funds should be used solely and exclusively for the care and maintenance of such additional guests and not for any other purpose, and, in the event that either The Henry G. Long Asylum or the Ann C. Witmer Home should be unwilling or unable to accept the income under such conditions, that the entire income should be awarded to the one accepting, and if neither accepted, to accumulate the income for the period of five years, pending further action by the court at the ex-

piration of such time, or sooner, if conditions and circumstances should warrant.

In adjudication filed May 12, 1955, the present auditing judge decided not to adopt the recommendations of the amicus curiae in entirety, but directed that the corpus of the estate should be held intact and the income accumulated for a period of five years, reserving final disposition of the fund for that period of time. . . .

Exceptions were filed to said adjudication by the Witmer Home, the Long Asylum and the trustee.

The court en banc, per Judge Bolger, dismissed all exceptions pro forma, without prejudice to "permit re-application by the exceptants if the future course of the litigation in this estate warrants such action."

The court was critical of the trustee's efforts to carry into effect the intention of the testatrix, stating:

"In this respect the trustee has been conspicuously derelict in failing to make a complete investigation and presentation to the amicus curiae of the needs of the people of Lancaster respecting the testatrix' purpose as to the present thinking and development of public and private authorities in the care of aging persons, or of any program in substance or form that would be the basis for an intelligent judgment by the amicus curiae and by the Auditing Judge."

The court then suggested a number of possible uses for the trust funds consistent with the expressed wishes of the testatrix. In conclusion, the exceptions were dismissed pro forma, and the record was returned to the auditing judge, at his request, for further investigation and consideration in accordance with the suggestions of the court, and such other possibilities as might develop.

The amicus curiae, at the direction of the auditing judge, thoroughly explored every one of the sugges-

tions which appeared in the opinion of the court en banc. He made further extensive investigation. He had numerous conferences with various interested parties. He held additional hearings. There is no need to repeat here what appears fully in the third report of the amicus curiae. Suffice to say, none of the suggested plans proved workable.

In the course of his investigation, the amicus curiae learned that under the will of Jacob S. Peacock, deceased, a trust was created, of which Fulton National Bank of Lancaster is trustee. The purpose of that trust is to establish a home for aged men and women of Lancaster on a specific site in Lancaster County. The corpus of this fund is in excess of half a million dollars. Nonetheless, this fund, as in the instant case, is insufficient to establish the charitable institution described in the Peacock will. The amicus curiae suggested to the auditing judge the possibility of an amalgamation of these two trusts and the substantial accomplishment of the purposes of both.

At this point, Lois G. Forer, Esq., Deputy Attorney General, specially charged with the duties of the attorney general as parens patriae in charitable trusts, entered the picture. Mrs. Forer and the amicus curiae had many conferences with the officials of the Fulton National Bank, with counsel and officials of The Henry G. Long Asylum, with the auditing judge and with President Judge Bowman of the Orphans' Court of Lancaster County. Thereafter, the amicus curiae held further formal hearings. Thereafter, the auditing judge held a number of conferences in chambers with counsel for all interested parties; had a formal hearing in court on September 26, 1961; and held the audit of the final account of John Shahedy, trustee, on February 13, 1962.

The plan which evolved, and which (except for several minor changes) the auditing judge herewith ap-

proves, was set forth in summary in a "Memorandum of Intention" which was executed on March 30, 1961, by the trustees of the Henry G. Long Asylum and the Fulton National Bank of Lancaster, trustee under the will of Jacob F. Peacock, deceased. It reads as follows:

"THIS MEMORANDUM is drafted for the purpose of setting forth basic principles of the intention of the Trustees of The Henry G. Long Asylum (hereinafter called LONG), and the Trustees of the Jacob S. Peacock Trust (hereinafter called PEACOCK), this thirtieth day of March, A. D. Nineteen Hundred Sixty-one (1961).

"Long is presently maintaining a home for indigent women in Lancaster, Pennsylvania, and is not operating to capacity, there presently being room for twelve women to be cared for in the home if there is sufficient income to maintain them.

"Peacock is directed under its Will to erect and maintain a home for men and women but the Trustees of Peacock have been unable to do so because of insufficient funds.

"Both Long and Peacock have been interested in obtaining by cy pres the benefit of funds in the Mary C. Melson trust in Philadelphia

"Peacock is willing that the funds of the Mary C. Melson Trust be awarded to Long to provide additional income for the maintenance of women and thereby make more use of the capital presently invested in the plant at Long home, and thereby caring for more women than could be cared for otherwise.

"If the Mary C. Melson Trust should be made available to Long, Long and Peacock are agreed that additional quarters, consisting of bedrooms and baths of a one story motel type, be erected by Peacock on the grounds of Long, adjoining the present Long home building, to house men and women qualified under the

Peacock Trust, and that these men and women use the dining facilities, the recreation and public rooms, grounds, staff, etc., of Long (which are quite adequate for the purpose), thereby saving an investment of capital in the construction of these common facilities.

"It is the intent that Peacock will pay Long the per capita cost of caring for the guests and maintaining their building. In addition, Peacock shall pay Long such rent for the use of Long's grounds, dining, recreational and other facilities, as shall be determined by the respective Trustees from time to time.

"The parties hereto contemplate that if suitable terms can be reached between them, they will enter into a definitive agreement which would be subject to the approval of the Orphans' Court of Lancaster County, Pennsylvania, which has jurisdiction over both Trusts."

In approving the foregoing plan, the auditing judge has taken into consideration the fact that The Henry G. Long Asylum was created and exists under the will of Henry G. Long, probated in 1889, and the will of his daughter, Catharine H. Long, probated in 1900, both of which wills contained bequests to testatrix; that Henry G. Long was an uncle of Jacob M. Long, who was an uncle of testatrix, so that testatrix was a grandniece of Henry G. Long. It is, therefore, deemed entirely appropriate by the auditing judge that the charitable purposes of the trust created by testatrix be effectuated and realized through cooperation with and the beneficial participation by The Henry G. Long Asylum, which was founded by her great uncle.

To accomplish the foregoing plan, the auditing judge has issued, or herewith does issue, the following orders and decrees:

1. Under date of September 26, 1961, the court has accepted the resignation of John Shahedy as trustee,

conditioned upon the final confirmation of his final account and the said account is hereinafter confirmed nisi.

2. Under date of September 26, 1961, the court appointed the Fulton National Bank of Lancaster as substituted trustee of the estate of Mary C. Melson, deceased, with the direction that it have no duty until the funds in the instant trust are delivered to it, except to vouch the final account of John Shahedy, trustee.

3. The auditing judge has audited the final account of John Shahedy, trustee. At that audit, the Fulton National Bank, by its counsel, Ralph M. Barley, Esq., stated that it had vouched the account and found it to be in order.

4. At the audit, Joseph H. Grubb, Jr., Esq., attorney for the accountant, requested additional counsel fee of $2,000, which, together with the $3,000 fee for which credit is taken in the final account, amounts to a total fee of $5,000. There were no objections to this counsel fee. It is hereby allowed.

5. At the audit, John Shahedy, trustee, formally waived any claim for trustee's commissions on principal. The auditing judge approves this action and compliments the trustee thereon. There is no doubt that Mr. Shahedy has devoted countless hours in the administration of the trust and that his purposes have always been sincere, although the results may not have been exemplary.

6. The court is satisfied that the purposes and intentions of testatrix, as set forth in her will and codicils, cannot be accomplished with the assets, both principal and income, which now constitute the trust. The court, therefore, applies the doctrine of cy pres. The court is satisfied that the plan herein set forth is the most feasible and more nearly approaches the intent and purpose of the testatrix as set forth in her

will and codicils than any plan or claims heretofore presented.

It is important to note that the Ann C. Witmer Home of Lancaster, and Christ's Home, situated in Paradise, Lancaster County, which at prior hearings before the amicus curiae and before this court made claim to the fund by cy pres, have withdrawn their claims.

As appears in the "Memorandum of Intent", it is planned that the Joseph S. Peacock Trust will erect motel units on the premises of The Henry G. Long Asylum in Lancaster; that these motel units will house aged *men and women;* that these *men and women,* the beneficiaries of the Peacock Trust, will use the dining facilities, public and recreation rooms and grounds, and the staff of The Henry G. Long Asylum. Thus, both men and women will use the facilities of The Henry G. Long Asylum. As a consequence, the major objection heretofore raised by the amicus curiae, by the auditing judge and by the court en banc against the cy pres of the fund for the benefit of The Henry G. Long Asylum, namely, that its charter was restricted to the care of women, whereas the testatrix' will showed an intent to benefit "persons", i.e., both men and women, is now substantially removed.

At the audit, counsel for The Henry G. Long Asylum stated of record that the Long Asylum, on the basis of current costs, will be able to admit *at least* six new guests and maintain them in the home with the current income from the instant trust; that six ladies have made application for admission to The Henry G. Long Asylum and have been accepted by it as fully qualified for admission, if, as and when it receives the income from the instant trust.

The court, therefore, in the exercise of its cy pres powers, herewith awards the principal of the instant

trust, together with all income accumulated up to and including December 31, 1960, which is to be capitalized and become a part of the corpus of the trust, to the Fulton National Bank of Lancaster, substituted trustee, to pay the net income to The Henry G. Long Asylum, in regular convenient installments, for the purpose of maintaining and caring for six or more new guests in the Long Asylum.

7. At the audit, F. Lyman Windolph, Esq., and John B. Rengier, Esq., counsel for The Henry G. Long Asylum, presented a claim for counsel fees in the amount of $10,000. Their claim was based upon extensive services over a period of years in the various proceedings before the amicus curiae and this court. Lois G. Forer, Esq., Deputy Attorney General, opposed the allowance of this fee by this court out of this fund at this time on the ground that it would set an improper precedent in future cy pres proceedings. No authority was cited in support of the claim. The auditing judge is satisfied that Messrs. Windolph and Rengier have rendered extensive, exemplary services to The Henry G. Long Asylum over a period of years. There is no doubt that they are entitled to compensation for their services. The auditing judge expresses no opinion as to the value of these services or the appropriate amount of fee. However, the auditing judge is satisfied and rules that Messrs. Windolph and Rengier are not entitled to be compensated out of the funds of this trust. To allow such compensation in every cy pres proceeding might well cause the diminishment of the fund which usually is already too small to accomplish the purposes of the testator settlor. Of course, this ruling is without prejudice to the rights of Messers. Windolph and Rengier to claim a fee for their services from The Henry G. Long Asylum.

8. The amicus curiae has requested compensation to himself in the amount of $5,000, and compensation

for his financial expert and adviser, Stephen E. McLoughlin, Jr., in the amount of $2,500. No objections were made to this compensation. The amicus curiae and his financial adviser have expended countless hours in the performance of their duties; they have taken numerous trips to Lancaster and elsewhere; many hearings have been held; finally, their labors have proved fruitful. The auditing judge is satisfied that this compensation is fair and reasonable and it is hereby allowed.

9. At the audit, Agnes Weston Scott presented a claim for $39,210.62, in lieu of her rights under the will and codicils of testatrix.

By codicial dated March 15, 1929, testatrix provided:

"I want Mrs. Agnes Scott, now living with me at 2031 N. Park Avenue, my housekeeper, good and kind to me, to be Matron of the JML Home . . .

"Subject to these alterations, changes, revisions, revocations, etc., I affirm my will and codicils."

Claimant's counsel contends that the foregoing codicil manifested testatrix' intention to benefit her closest friend, Agnes Scott. He urges that this intention was primary or at least co-dominant with her intention to establish and erect the "charitable home for worthy persons of means insufficient for their comfort, maintenance and support." He argues further that there was a co-equal obligation upon the trustee of this estate to establish such a home and to employ Mrs. Scott as the matron thereof.

Evidence was introduced at the audit which showed that Mrs. Scott was born in August 1885, and, therefore, is now 76½ years old; that her life expectancy under current mortality tables is presently 7.52 years; that The Henry G. Long Asylum presently employs a matron at the rate of $230 per month, namely, room

and board valued at $45 per month and a cash salary of $185 per month; and that an assistant matron is employed at $350 per month.

On cross-examination of Mrs. Scott, it was brought out that she has had no special training, schooling or experience as a matron of a home for aged persons, her sole experience of any comparable value being that of manager of a small hotel in Atlantic City for a year or two.

A trustee for The Henry G. Long Asylum testified that the home has recently employed an assistant matron because the matron has reached 70 years of age and, because of her age, is unable to perform all her customary duties; that the assistant matron is a younger woman and also is a registered nurse; that the board of trustees plans in the near future to retire the matron and to employ a younger matron, preferably a registered nurse; that the duties of a matron in The Henry G. Long Asylum are arduous and on a 24 hour a day basis; that in the opinion of the trustees, Mrs. Scott is hopelessly lacking in the qualifications required of the matron of that home.

Despite the foregoing testimony, Mrs. Scott computes the amount of her claim upon the basis of the salary paid the matron of The Henry G. Long Asylum, viz., $230 per month for the period from January 1, 1955 (when she allegedly lost her last position) to a date 7.52 years from now (basing this future claim upon the expectancy set forth in the tables).

The auditing judge is most sympathetic with the claim of Mrs. Scott. There is no doubt that testatrix intended her to be a matron of the home to be established. This home would probably have accommodated six to eight persons. It is entirely possible that Mrs. Scott could have served as matron of such a home had it been created in 1934 when testatrix died, and that

she could have served as matron for some years. It is most unfortunate that economic circumstances and the ever spiralling inflation of our national economy made impossible the establishment of the home envisaged by testatrix.

The fact is, however, that the home envisaged by the testatrix was *not* established. The dominant intent of testatrix was to establish a home for worthy persons of insufficient means. Any benefit to Mrs. Scott was incidental and subservient to testatrix' charitable intent. The above quoted codicil was not a legacy. No definite amount of salary was specified for Mrs. Scott. Mrs. Scott has not served in the home intended because it failed to become a reality. There has been no showing that Mrs. Scott is capable of serving as matron of The Henry G. Long Asylum; per contra, the evidence is that she is not capable of that assignment. No evidence has been introduced to show the salary ordinarily paid to a matron of a home for six or eight persons. No medical evidence has been introduced to show the physical condition of Mrs. Scott, other than her own testimony "Thank God, I am so healthy." Her expectancy was based on general tables for a woman aged 76½, without any reference to claimant's particular physical and mental condition. No evidence has been shown that Mrs. Scott made any effort to obtain a position after January 1, 1955. If her claim is based on contract, she had an obvious duty to mitigate the damages, which she has failed to do. No effort has been made to reduce the claim for the next 7.52 years to present money value.

Claimant argues that there is a mandate in the will that she be hired as matron from the date of testatrix' death to the date of her death. The absurdity of this is obvious. Suppose the home had been established, claimant had been employed as matron and then claimant had proved completely inefficient, had embezzled

money, had been brutal and unkind to the guests, had been insubordinate and disobeyed orders of the trustees, had developed a loathsome and contagious disease, had become bedridden from some crippling disease, or had become incapable of performing her duties by reason of advanced age. In any of these situations, the trustees would have had the right and duty to discharge her forthwith, despite the provision of the will.

Finally, the codicil provides "I *want* Mrs. Agnes Scott . . . to be matron of the JML Home." (Italics supplied.) Counsel cites Stinson's Estate (No. 1), 232 Pa. 218; Hand's Estate, 315 Pa. 238; and Bearinger's Estate, 336 Pa. 253, for the proposition that in this setting the word "want" is mandatory. The facts in the cited cases are distinguishable. Therefore, the auditing judge gravely doubts that the language used in the instant case is mandatory. It appears to be precatory. Of course, if the language be construed as precatory, that is the end of the matter. Assuming arguendo that the language is mandatory, it is obviously conditioned upon the establishment of the home. Since that did not occur, there was nothing upon which the alleged mandate could operate. As stated above, the creation of the charity, not the employment of Mrs. Scott, was the dominant purpose. Therefore, her claim at best was damnum absque injuria.

It is to be noted that it was suggested at the audit that Mrs. Scott's claim be resolved by her admission to The Henry G. Long Asylum as a guest. She categorically refused to enter the home except upon her own terms, namely, as matron.

The auditing judge concludes that testatrix did not vest in Mrs. Scott by her will and codicils any right which, under the circumstances, is measurable in money damages. Accordingly, the claim of Mrs. Scott is dismissed.

10. By codicil dated October 23, 1930, testatrix provided "Mr. John Shahedy has been good kind and considerate to me, I would like a room reserved for him at the Jacob M. Long Home. I have mentioned in my will to be in Lancaster, any time he would like to go to the home the room is to be ready for him and he is to be welcomed. . . ."

At the audit, John Shahedy renounced any absolute right to a room in The Henry G. Long Asylum. He requested, however, that this adjudication be without prejudice to his right to negotiate with the trustees of The Henry G. Long Asylum or the Peacock Trust for a room or place in one of these institutions. This adjudication gives Mr. Shahedy no right to a place in The Henry G. Long Asylum. It is, of course, without prejudice to his privilege of negotiating with the trustees.

11. As noted supra, The Fulton National Bank of Lancaster has been appointed substituted trustee of the instant trust. This bank is also trustee of the Peacock Trust. Application must necessarily be made to the Orphans' Court of Lancaster County for cy pres of that trust and approval of the erection of the motels on the property of The Henry G. Long Asylum.

The supervision of the administration of this trust, with its myriad details, should properly be in the Lancaster County Orphans' Court.

Therefore, pursuant to section 309 of the Orphans' Court Act of August 10, 1951, P. L. 1163, and with the consent of President Judge Bowman of the Orphans' Court of Lancaster County, the will of Mary C. Melson, deceased, is hereby transferred to the Orphans' Court of Lancaster County, so as to afford that court:

(a) jurisdiction over both the Mary C. Melson Trust and the Jacob S. Peacock Trust for future accountings of these separate trusts;

(b) the opportunity to take the contemplated and necessary action to apply the doctrine of cy pres to the funds of the Jacob S. Peacock Trust in accordance with the aforesaid memorandum of intention, dated March 30, 1961, and the plan herein adopted, subject to any modification which that court may deem necessary.

12. The trustees of The Henry G. Long Asylum shall take appropriate action after the award of income to them to arrange for proper and suitable acknowledgment by plaques, or as otherwise approved by the Orphans' Court of Lancaster County, to accord public recognition to the names of Mary C. Melson and Jacob M. Long.

13. The trustees of The Henry G. Long Asylum shall put into use such of the furniture and personal possessions of Mary C. Melson, deceased, as may reasonably be used, with the right on its part to sell such of the furniture and personal possessions of Mary C. Melson, deceased, as cannot be put to use; the proceeds derived from such sale to be applied to the maintenance and care of new guests. . . .

And now, March 12, 1962, the account is confirmed nisi.

*Opinion sur Exceptions*

KLEIN, P. J.—And now, April 24, 1962, upon consideration of the annexed receipt and release, the adjudication filed by Judge Lefever, in the above-entitled case on March 12, 1962, is amended, with his approval, to include an award to Agnes Scott, exceptant, in the sum of $5,000 in full settlement and release of and from all claims and demands which she now has or at any time may have had against said estate or against the executor and trustee, including any claim which she may have as a beneficiary, named in the will of Mary C. Melson.

The clerk of the orphans' court is directed to dismiss the exceptions of the said Agnes Scott and to mark satisfied of record the award of $5,000, hereinabove made.