Potteiger, Appellant, *v.* Fidelity-Philadelphia Trust Company.

Argued November 17, 1966. Before BELL, C.J.,
MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and
ROBERTS, JJ.

*Daniel H. Shertzer,* with him *Shertzer and Danforth,* for appellant.

*A. J. Drexel Paul, Jr.,* with him *George Chimples, A. David M. Speers,* and *Stradley, Ronon, Stevens & Young,* and *Duane, Morris & Heckscher,* and *Hart, Childs, Hepburn, Ross & Putnam,* for appellees.

*F. Lyman Windolph,* with him *Windolph, Burkholder & Hartman,* for appellees.

OPINION BY MR. JUSTICE JONES, March 14, 1967:

On June 3, 1964, Earl Potteiger, (Potteiger), a Lancaster County resident, executed a deed of trust in Philadelphia, transferring certain property to Fidelity-Philadelphia Trust Co., of Philadelphia, (Fidelity), and Wesley H. Caldwell,[1] a Philadelphia attorney, (Caldwell), as trustees. Under that trust deed, by its terms irrevocable, Potteiger was to receive the net income for life; upon his death, cash legacies totalling $41,000 were to be paid to twenty-two different named individuals (or the children of such individuals who may then be deceased) and the residue, after payment of a $2,000 legacy to a church, was to be paid to four designated charities.

Fourteen months after this trust deed was executed —August 3, 1965—Potteiger instituted an equity action in the Court of Common Pleas of Lancaster County against Fidelity and Caldwell and all the beneficiaries named in the trust instrument, both individual and

---

[1] Caldwell, as Potteiger's counsel, prepared the trust instrument and was a residuary beneficiary thereunder of a $5,000 legacy.

charitable,[2] to set aside the trust.[3] Of the defendants named in this action only two were residents of Lancaster County, [4] one of whom was designated to receive a $5,000 legacy and the other a $1,000 legacy under the trust deed. The trustees are residents of Philadelphia County, the trust is being administered, the res of the trust and its situs are located in that County.

Fidelity and Caldwell filed preliminary objections raising questions of *venue* and *jurisdiction*:[5] (a) since Fidelity and Caldwell are the principal defendants and no principal defendant resides in Lancaster County, *venue* of the action was not in Lancaster County; (b) the Court of Common Pleas of Lancaster County lacked *jurisdiction* to determine the matter. Three of the charitable organizations named as residuary beneficiaries filed substantially similar preliminary objections. The court below sustained the preliminary objections

---

[2] Notice of this action was given to the Attorney General.

[3] Potteiger alleged: (a) that he "intended, believed and was advised," when he executed the agreement, the trust was revocable but a clause had been inserted therein making it irrevocable; (b) Potteiger was advised by Caldwell and believed the trust would include only certain assets owned jointly by Potteiger and his deceased mother whereas the trust was composed largely of Potteiger's solely owned assets; (c) Caldwell failed to explain that Potteiger was placing the assets beyond his control and making irrevocable gifts.

[4] Five, including the trustees, are residents of Philadelphia County, three of Delaware County, one of Chester County, two of Lebanon County, twelve of Berks County, two of Lancaster County, two of Connecticut, one is deceased and one's whereabouts are unknown.

[5] "*Venue* is the right of a party sued to have the action brought and heard in a particular judicial district", and "*Jurisdiction of subject matter* relates to the competency of a court to hear and determine controversies of the general nature of the matter involved", while "*Jurisdiction of the person* is ordinarily acquired by service upon [such person] of the court's process within the territorial limits of its authority." (Emphasis supplied): *McGinley v. Scott*, 401 Pa. 310, 316, 164 A. 2d 424 (1960).

and dismissed the complaint without prejudice to Potteiger's right to bring suit in a county of proper venue and a court of proper jurisdiction. This appeal attacks that decree.

The record established that only two of the twenty-nine named defendants are residents of Lancaster County, that the two trustees are residents of Philadelphia County, that Caldwell, who, allegedly, misinformed and ill-advised Potteiger, is a resident of Philadelphia County and that the trust is being administered and its situs is in Philadelphia County. In this factual posture, was *venue* of this action properly in Lancaster County?

Initially, we consider the question of *venue*, although, in the case at bar, the questions of *venue* and *jurisdiction* are closely intertwined. Potteiger relies upon Pa. R.C.P. 1503 (a) (1), to sustain his position that *venue* lies in Lancaster County, and to sustain his position that the Court of Common Pleas of Lancaster County had *jurisdiction* over the subject matter of the action he relies upon the long recognized equitable jurisdiction and power vested in common pleas courts to set aside trusts.[6] The preliminary objectors claim that Pa. R.C.P. 1503 (a) (1), is inapposite and that §15 of the Act of 1836 (Act of June 14, 1836, P.L. 628, §15, 20 P.S.§2741), governs both *venue* and *jurisdiction* in this action and that only the Orphans' Court of Philadelphia County can entertain this action.

Any consideration of Rule 1503 (a) (1), must initiate with an examination of the Act of 1859[7] which, prior to the promulgation of Rule 1503 (a) (1), gov-

---

[6] As we understand Potteiger's position, he contends that, under the instant factual situation, the Court of Common Pleas of Lancaster County had *exclusive* jurisdiction.

[7] Act of April 6, 1859, P. L. 387, §1 et seq., as amended, 12 P.S. §§1254, 1255, 1256, specifically suspended by Pa. R. C. P. 1550(6).

erned the *venue* in equity actions which involved extra-territorial service. That statute, entitled "To authorize Execution of Process in certain cases in Equity, concerning property within the Jurisdiction of the Court, and on Defendants not resident or found therein", provided, inter alia, that, where a court, *having equity jurisdiction,* in an equity suit acquired "jurisdiction of the subject matter in controversy, by the service of its process on one or more of the principal defendants", then such court could authorize extraterritorial service of process upon other defendants. In *Coleman's Appeal,* 75 Pa. 441 (1874), Justice (later Chief Justice) SHARSWOOD, construing the Act of 1859, supra, said: ". . . it has not been the policy of our jurisprudence to bring non-residents within the jurisdiction of courts unless in very special cases. . . . We may congratulate ourselves that such has been the policy, for nothing can be more unjust than to drag a man thousands of miles, perhaps from a distant state, and in effect compel him to appear and defend under the penalty of a judgment or decree against him *pro confesso.* The Act of 1859 ought, therefore, to receive a construction in harmony with this policy. There exists no good reason why courts of equity should be invested with a more enlarged jurisdiction against non-residents than courts of law". (p. 457). After noting that "there is certainly some uncertainty, in knowing what the legislature [under the Act of 1859, supra], meant by a principal defendant", (p. 458), the Court concluded that what the legislature intended by the language "principal defendant" was an "active party", i.e., one so necessarily involved in the subject in controversy that no decree could be made without his being before the court as contrasted with a "passive party", i.e., where complete relief could be provided in the litigation without affecting the rights of such party. (p

459). See also: *Vandersloot v. Pa. W. & P. Co.,* 259 Pa. 99, 103, 104, 102 A. 422 (1917).

Perhaps the leading case construing the words "principal defendant" is *Bird v. Sleppy,* 265 Pa. 295, 108 A. 618 (1919). In *Bird,* the Court stated (p. 298) that: "A principal defendant is one who has an interest in the controversy presented by the bill, and whose presence is requisite to the complete or partial adjudication of the controversy" and it then adopted the distinction between "active" and "passive" parties noted in *Coleman,* supra. While this Court in *Miller Paper Co. v. Keystone C. & C. Co.,* 275 Pa. 40, 46, 118 A. 565 (1922) seems to suggest that *Vandersloot* and *Bird* be restricted to their own factual situations, nevertheless, the *Bird* definition of a "principal defendant" in the 1859 Act has been followed. See: *Clark v. Elkin,* 283 Pa. 339, 344, 129 A. 97 (1925); *Whittaker v. Miller,* 301 Pa. 410, 412, 413, 152 A. 670 (1930); *Mid-City B. & T. Co. v. Myers,* 343 Pa. 465, 470, 471, 23 A. 2d 420 (1942); *Lower Merion Township v. 34 Derwen Road, Inc.,* 362 Pa. 149, 151, 66 A. 2d 293 (1949).

This Act of 1859 has been superseded by Pa. R.C.P. 1503 (a) (1), effective July 1, 1956, which provides, in pertinent part: "Venue. (a) Except as otherwise provided by an Act of Assembly, Rule of the Supreme Court or Subdivision (b), (c) or (d), an [equity] action may be brought in and only in a county in which (1) the defendant or a principal defendant may be served, or (2) the property or a part of the property which is the subject matter of the action is located ...".[8]. Since the promulgation of Rule 1503 (a) (1), the *Bird* definition of a "principal defendant" has been followed: *Lesavoy Industries, Inc. v. Pa. General Paper Corp.,* 404 Pa. 161, 166, 171 A. 2d 148 (1961); *Urey*

---

[8] By reason of the instant factual situation, §(a)(2) is not presently apposite.

*v. Horchler,* 180 Pa. Superior Ct. 482, 487, 119 A. 2d 859 (1956). See also: "The New Pennsylvania Equity Rules, A Survey", Amram and Schulman, 100 U. of Pa. L. Rev. 1089, 1095.

In line with the foregoing definition of a "principal defendant", it must be noted that all persons who have a material interest in the controversy or litigation or in the subject matter and all parties whose interests will be affected or determined in the proceedings must be made parties thereto: *Hanna v. Chester Times,* 303 Pa. 252, 255-256, 154 A. 591 (1931); *Rehr v. Fidelity-Philadelphia Trust Co.,* 310 Pa. 301, 304, 165 A. 380 (1933). In *Hanna,* supra, (p. 256), the following statement from 21 C.J. 260-61 was quoted with approval: ". . . a decree should finally and completely determine the rights which all persons have in the subject matter decided, so that the parties may safely obey and act upon the decree and all other proceedings may be avoided. To this end it is necessary to bring all the parties before the court, as otherwise their interests will not be concluded, for, as a general rule, no binding decree can be rendered against a person who is not a party to the suit." Any person who might be adversely affected by a decree must be made a party: *Reifsnyder v. Pittsburgh Outdoor Advertising Co.,* 396 Pa. 320, 326, 152 A. 2d 894 (1959); *Findley v. Warren,* 244 Pa. 64, 90 A. 457 (1914).

Bearing in mind that the purpose of the present proceeding is to set aside a trust inter vivos and that, if such trust is set aside, the pecuniary gifts to the two persons who are residents of Lancaster County will be extinguished, it seems obvious, under our case law, that these two trust beneficiaries are within the class of "principal defendants" envisioned by Rule 1503 (a) (1). Therefore, if Rule 1503 (a) (1) governs, the *venue* of this action would lie in Lancaster County.

Appellees and the court below take the position that the Act of 1836, supra, not Rule 1503 (a) (1), governs the venue in this proceeding. Rule 1503 (a) (1) is expressly made subject to several exceptions one of which is "Except as otherwise provided by an Act of Assembly, . . ." and, it is urged, that the 1836 Act falls within such exception.

The Act of 1836, supra, §15, in respect to inter vivos trusts, provides: "Whenever any . . . conveyance, or transfer, . . . shall have been made, or shall hereafter be made, by deed, . . ., or otherwise, of any estate, real or personal, to any person or corporation, in trust for, or for the use or benefit of any person, or association of persons, or corporation; . . ., the court of common pleas of the county in which any such trustee shall have resided at the commencement of the trust, or, if such trustee be a corporation, in which such corporation is situate, or in which its principal officers shall have resided, as aforesaid, shall *exercise the jurisdiction and powers given by law* in regard to such trust; . . . ." (Emphasis supplied). An analysis of this statute indicates that, in the case of *any* inter vivos trust, created before or after the effective date of the statute, the court of common pleas of the county where (a) in the case of an individual trustee, such trustee was resident when the trust began, or (b) in the case of a corporate trustee, such corporate trustee is situated or its principal officers reside, is given the *venue* of any action involving such trusts. However, it must be noted that the 1836 statute empowers such common pleas court only to "exercise the jurisdiction and powers given by law in regard to such trust." We agree with the statement in *Whitney's Appeal,* 22 Pa. 500, 506 (1854), that the 1836 statute "was intended more to determine *how* the jurisdiction of the Court of Common Pleas over trustees should be applied, than to give the jurisdiction itself." (Emphasis supplied). Un-

like appellees and the court below we do not construe this statute as conferring *jurisdiction* on a common pleas court to set aside an inter vivos trust; the statute confers upon a common pleas court, which meets the specific restrictions of the statute, *the power to act*, to the exclusion of other courts, provided that such common pleas court has been *given by law*[9] *jurisdiction* to act over the subject matter involved in the trust action.

Recently, in *La Rocca Trust*, 411 Pa. 633, 636, 192 A. 2d 409 (1963), we said: "As a general rule, the jurisdiction of litigation involving the reformation of written instruments is in the court of common pleas sitting in equity." For over a century, common pleas courts in this Commonwealth have exercised equitable jurisdiction to reform or set aside inter vivos trust instruments: *Browne, for use, v. Weir*, 5 S. & R. 400 (1819); *Russell's Appeal*, 75 Pa. 269 (1874); *Rick's Appeal*, 105 Pa. 528, (1884); *Rehr v. Fidelity-Philadelphia Trust Co.*, 310 Pa. 301, 165 A. 380 (1933); *Irish v. Irish*, 361 Pa. 410, 65 A. 2d 345 (1949); *Damiani v. Lobasco*, 367 Pa. 1, 79 A. 2d 268 (1951); *Schellentrager v. Tradesmens Nat'l Bank & Trust Co.*, 370 Pa. 501, 88 A. 2d 773 (1952). Until the passage

---

[9] Since the 1836 Act covers inter vivos trusts created before and after its enactment, the grant of power to act under the statute would necessarily involve jurisdiction over the subject matter of the trust action *given by law* both prior to and subsequent to the passage of the statute. The important thing under the statute, is that, when the common pleas court is called upon to act, it must have *jurisdiction* to grant the relief prayed for. Illustrative of *"jurisdiction and powers given by law"* is a statute, passed just two days subsequent to the 1836 statute, supra, which granted to common pleas courts "jurisdiction and powers of a court of chancery" in certain specifically enumerated instances and "in such other cases" as common pleas courts had "such jurisdiction and powers, under the Constitution and laws of this commonwealth." (Act of June 16, 1836, P. L. 784, §13, 17 P.S. §281).

of the Act of June 26, 1931, P.L. 1384, §1, 20 P.S. §2253 (a) (now repealed), amending the Orphans' Court Act of 1917 (Act of June 7, 1917, P.L. 363, §9 (n)), the jurisdiction over trusts inter vivos in the common pleas courts was exclusive and such trusts were beyond the jurisdiction of the orphans' courts. See: *Douglas's Estate,* 303 Pa. 227, 154 A. 376 (1931) and cases therein cited (p. 232).

We are of the opinion that: (a) the Act of 1836, supra, governs *venue* in equity actions which involves inter vivos trusts; (b) that Rule 1503 (a) (1) did not suspend the Act of 1836, supra; (c) assuming that *jurisdiction* of the subject matter, concurrent or exclusive, was in a court of common pleas to set aside an inter vivos trust, the place for the institution of this action was controlled by the Act of 1836, supra; (d) on the record facts, Philadelphia, not Lancaster County was the place of proper *venue* for this action.

Our next inquiry is whether, at the time the instant action was commenced, courts of common pleas did have *jurisdiction* to set aside an inter vivos trust. The late Judge GEST in *Comly's Estate,* 16 Pa. D. & C. 336, 339 (1932) noted that, prior to the Act of 1931, supra, the orphans' court lacked any jurisdiction over inter vivos trusts but that the 1931 Act, supra, vested in the orphans' courts a certain limited jurisdiction and power over inter vivos trusts. Until the Act of December 22, 1965, P.L. 1192, §1, 20 P.S. §2080.301(3)), which amends the Orphans' Court Act of 1951, §301(3) (Act of August 10, 1951, P.L. 1163, §301(3), 20 P.S. §2080.301(3)), orphans' courts had limited concurrent jurisdiction with common pleas courts over inter vivos trusts. President Judge KLEIN in *Fisher Estate,* 26 Pa. D. & C. 2d 351 (1962), well stated (pp. 358, 359): "The legislature in section 304 of the Orphans' Court Act of . . . 1951, . . ., reenacted this basic principle in the following language: 'The Orphans' Court shall have

all legal and equitable powers required for or incidental to the exercise of its jurisdiction.' Although the Orphans' Court Act, supra, in some respects broadened the scope of the court's jurisdiction: Henderson Estate, 395 Pa. 215 (1959); Rogan Estate, supra; Webb Estate, 391 Pa. 584 (1958); and in section 301 (3), invested it with exclusive jurisdiction over the '. . . administration and distribution of the real and personal property of inter vivos trusts . . .', it did not supply the complete and plenary equity jurisdiction which the orphans' court did not possess theretofore: See Mains Estate, 322 Pa. 243, 246 (1936).

"In the present case [Fisher] is seeking relief in the nature of reformation of the three deeds of trust, which he alleges he signed as part of a complex of documents premised upon mistakes of fact. Reformation is an equitable remedy and is one of the procedures employed to correct inequities resulting from accident, mistake and fraud: See Bispham's Principles of Equity (7th Ed.), p. 45. Only a court possessing general equitable powers has original jurisdiction to grant relief by means of reformation.

"Since the orphans' court does not possess general and plenary equitable power, grave doubt exists as to whether it has jurisdiction to entertain the petitions filed by the settlor, standing by themselves as an independent proceeding. This is a matter which should receive the early attention of the legislature, as it seems clear that the orphans' court is best equipped by experience and the nature of its work to pass upon all matters pertaining to all problems in connection with inter vivos trusts."

Until the 1965 amendment, orphan's courts were without jurisdiction *in an independent proceeding* to reform or set aside inter vivos trusts although the orphans' courts did exercise jurisdiction to reform or set aside such trust if such action was *incidental* to

its legal and specifically granted statutory powers.[10] See: *La Rocca Trust,* 411 Pa. 633, 636, 192 A. 2d 409 (1963); *Binenstock Trust,* 410 Pa. 425, 431, 190 A. 2d 288 (1963); *Schoble Trust Estate,* 346 Pa. 318, 322, 324, 30 A. 2d 316 (1943); *Mathew's Trust Estate,* 339 Pa. 219, 220-224, 13 A. 2d 9 (1940); *Mellinger's Estate,* 334 Pa. 180, 186, 5 A. 2d 321 (1939); *Wilson v. Board of Directors of City Trusts,* 324 Pa. 545, 552, 553, 188 A. 588 (1936); *Moffat Trust,* 30 Pa. D. & C. 2d 53, 55 (1963); *Sawtelle Estate,* 28 Pa. D. & C. 2d 381 (1962). Section 301 (3) of the Orphans' Court Act of 1951, supra, gave *exclusive* jurisdiction to the Orphans' Courts of: "(3) Inter vivos trusts. The *administration*[11] and *distribution* of the real and personal property of inter vivos trusts whether created before or after the effective date of this act, except any inter vivos trust created before the effective date of this act, jurisdiction of which already has been acquired by another Pennsylvania court. Another court which has acquired jurisdiction of the trust may transfer it to the orphans' court." The reformation or the setting aside of an inter vivos trust not being encompassed within the words "administration and distribution" of an inter vivos trust, §301(3) did not give *exclusive* jurisdiction to the orphans' courts to reform or to set aside such a trust.

From 1931 until December 22, 1965, orphans' courts did exercise equitable jurisdiction to reform or to set aside inter vivos trusts deeds only if (1) such exercise

---

[10] The Orphans' Court Act of 1951, Act of August 10, 1951, P. L. 1163, §304 (20 P.S. §2080.304) provides "The orphans' court shall have all legal and equitable powers required for or incidental to the exercise of its jurisdiction."

[11] "Administration" of an estate is "a term applied to denote the management of an estate by a person appointed by authority of law to take charge thereof in place of the legal owner.": *In Re Kyte* (D.C. Pa.), 189 F. 531, 532 (1911).

of jurisdiction was incidental to its specifically granted jurisdiction and powers and (2) if the jurisdiction of a common pleas court had not attached.

From our examination of the statutory and case law we are clearly convinced that, when the instant action was instituted, the common pleas courts had been given by law jurisdiction and power to set aside inter vivos trusts sufficient to satisfy the language of the Act of 1836, supra, and meet its requirements.

The amendment of December 22, 1965, added to §301(3) of the Orphans' Court Act of 1951, supra, "and the reformation or setting aside of any such [inter vivos] trusts" thus vesting exclusive jurisdiction in orphans' courts to reform or to set aside inter vivos trusts. However, that amendment, applicable to trusts created prior to its passage, does not apply when jurisdiction already has been acquired by another Pennsylvania court.

It is contended that this amendment of December 22, 1965, is retroactive and that the jurisdiction of the common pleas court to set aside this trust has been ousted by such new legislation. We do not agree. That which we stated in *Commonwealth v. Scoleri*, 399 Pa. 110, 132, 133, 160 A. 2d 215 (1960), is presently applicable: "In the first place, Section 56, art. V. of the Statutory Construction Act provides: 'No law shall be construed to be retroactive unless *clearly and manifestly* so intended by the legislature.' . . . In the construction of statutes our courts have uniformly adhered to this legislative mandate: [citing authorities]. . . . In the second place, since the 1959 statute is amendatory, Section 73, art. V of the Statutory Construction Act applies: 'Whenever a section or part of a law is amended, the amendment shall be construed as merging into the original law, become a part thereof, and replace the part amended and the remainder of the original law and the amendment shall be read together and

viewed as one law passed at one time; but the portions of the law which were not altered by the amendment shall be construed as effective from the time of their original enactment, *and the new provisions shall be construed as effective only from the date when the amendment became effective.* Hence amendatory statutes are construed retroactively only if such construction is clearly indicated under the provisions of the statute; [citing authorities]".

Moreover, the jurisdiction of a common pleas court had already attached at the time this action was instituted within the scope of the legislative intent expressed in the amendment. While the court of common pleas lacked *venue* under the Act of 1836, supra, such court did have *jurisdiction* over the subject matter generally. It is argued that, since the question of jurisdiction had not been determined when the 1965 amendment became effective, jurisdiction of the court of common pleas had not yet attached; such argument lacks merit.

Under the Act of 1836, supra, the *venue* of this action was not in Lancaster County and the court below properly dismissed the action.[12]

. Decree affirmed. Appellant pay costs.

---

[12] The writer of this opinion believes that, had venue been proper in Lancaster County, the doctrine of forum non conveniens might well have been invoked and the matter transferred to the common pleas court of Philadelphia County. While there is no express statutory authority for such inter-county transfer, no sound reason appears why such doctrine could not be invoked since the action is in equity and equitable principles, particularly in the instant factual situation, would demand such a transfer to another county. See: §117e, Restatement 2d, Conflict of Laws, (Tentative Draft No. 4, 1957); *Plum v. Tampax, Inc.*, 399 Pa. 553, 160 A. 2d 549 (1960); *Radio Corporation v. Rotman*, 411 Pa. 630, 192 A. 2d 655 (1963); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839 (1947); *Overfield v. Pennroad Corp.*, 113 F. 2d 6 (1940); *Todd v. Grace Line, Inc.*, 22 Pa. D. & C. 2d 75 (1960).

In this connection, see: Orphans' Court Act of 1951, supra, §306, 20 P.S. §2080.306, as to venue in connection with inter vivos trusts; Orphans' Court Act of 1951, supra, §308, 20 P.S. §2080.308 as to situs of inter vivos trust; Orphans' Court Act of 1951, supra, §309, 20 P.S. §2080.309 as to change of situs of inter vivos trust by order of court. See also: *Melson Estate*, 27 Pa. D. & C. 2d 66 (1962); *Pennington Trust*, 421 Pa. 334, 219 A. 2d 353 (1966).