## Comly's Estate.

The facts appear from the adjudication of

Gest, J., Auditing Judge.—On February 11, 1910, Daniel F. Comly executed a voluntary deed of trust, recorded March 18, 1910, in Deed Book W. S. V. 1260, page 403, a certified copy of which is hereto annexed, in which it is recited that Charles E. Solly et al., by deed dated October 2, 1893, and recorded in Deed Book T. G. 345, page 515, conveyed to him, the said Daniel F. Comly, in fee, certain real estate in the twenty-fifth ward of the City of Philadelphia, containing six acres and 150 perches; that the purchase money paid for said land, amounting to $1100, was paid by William F. Comly, the

father of said Daniel F. Comly, with the purpose of preserving said lot of ground for the benefit and advantage of the heirs of Samuel Comly under the provisions of his last will and testament dated February 24, 1855, subject only to the payment to him, the said Daniel F. Comly, of the consideration money paid to the grantors thereof by his said father, William F. Comly, with interest thereon from the date of said payment. The deed of trust then acknowledged and declared that the said Daniel F. Comly, for himself, his heirs and assigns, held the said lot of ground in trust for the benefit and advantage of James Comly, Harry Comly, Charles Comly and William Comly, children of John Comly; Ruby Comly and Samuel Comly, children of Nathan Comly; Mary C. Swing, daughter of Rebecca Swing; Samuel Comly, James Vincent Comly, Daniel F. Comly, children of William F. Comly; Dorothy W. Bustard, granddaughter of William F. Comly, and George Comly, son of Robert Comly, subject to the payment of a certain mortgage of $1000 to secure the purchase money in said premises, and further subject to the rights and privileges of Rebecca Swing and Mary French, daughters of Samuel Comly, to use, occupy and enjoy the above-described premises for and during their lives and the life of the survivor of them, in accordance with the terms and conditions in said last will and testament of Samuel Comly, mentioned and declared as respects the premises in said last will and testament of Samuel Comly, described and referred to, and, further, that the said Daniel F. Comly, his heirs or assigns, at any time, at the proper cost and charges of the said James Comly and others, as above mentioned, would convey by good and sufficient deed the same premises so bargained and sold, subject as aforesaid.

Daniel F. Comly, as trustee, together with all the persons interested in said land, did, on November 29, 1926, sell and convey the same to the Marshall Construction Company for $32,375, joining the trustee of the estate of Samuel Comly, which owned one-third interest in said land.

This account is filed of two-thirds proceeds of the sale of the land, in consequence of the death of Mary P. French, on October 5, 1930, she being the last survivor of the children of Samuel Comly, deceased, entitled to the enjoyment of the premises for life.

It appears that Samuel Comly, the father of William F. Comly, died on June 1, 1866, leaving a will executed February 2, 1855, a copy of which is annexed. Samuel Comly, when he made his will, was seized of a tract of land of twenty-four acres, together with two lots adjoining and comprising six acres and 150 perches, the latter being the same real estate above referred to. Two-thirds of the latter tract, owned by Samuel Comly when he made his will, became, by sundry conveyances, vested in one Joseph Perry, who is stated to have been associated with William F. Comly, a son of Samuel Comly. The said Joseph Perry died seized thereof, and his heirs, in 1893, in consideration of $1100, conveyed their interest to Daniel F. Comly aforesaid. William F. Comly died October 8, 1907, and, thereafter, on February 11, 1910, Daniel F. Comly executed the deed of trust above mentioned.

The will of Samuel Comly devised the premises in question, of which he owned two-thirds, to his son, John, in trust unto "my grandchildren now born or may be born hereafter share and share alike, with this express reservation, that is that the trustee, should he survive him, shall hold the property during his lifetime as an Asylum or headquarters for all my children each with equal rights to use and enjoy the use and benefits of the Farm and Buildings, subject however to any mutual arrangements they may make. In the event of the demise of John, the trustee, my executors must appoint other trustees who

shall hold the property for the purposes before mentioned until the demise of my last child."·

John Comly, the trustee, died on December 3, 1902, and the Land Title and Trust Company was appointed trustee in his stead, and, on October 18, 1926, the court authorized the trustee to sell the larger tract above mentioned under the Revised Price Act, but refused permission to sell the six-acre tract, which was the subject of the deed of trust. See Comly's Estate, 7 D. & C. 21.

It appears that the twelve persons mentioned as *cestuis que trustent* in the deed of trust of Daniel F. Comly were all of the heirs at law of Samuel Comly living at the date of the deed of trust, viz., February 11, 1910, eleven of them being the only grandchildren of Samuel Comly, and Dorothy Bustard being the only living great-grandchild, she being the child of a deceased grandchild, and that all the other grandchildren of Samuel Comly mentioned in the deed of trust had died without leaving a child or children to survive them, there being originally eighteen grandchildren, seven of whom had died prior to the execution of the deed of trust. When the account was filed of the proceeds of sale of the twenty-four-acre tract, the distribution was made, by the adjudication of Lamorelle, P. J., January 19, 1927, in accordance with the will of Samuel Comly and the family agreement thereto annexed, a copy of which is also annexed hereto. The persons then entitled to take included not only grandchildren born at the date of the death of Samuel Comly, but also those born thereafter, and it was also agreed that Mary P. French, the only surviving child of Samuel Comly, took a life estate in the property referred to in the testator's will in common with the other brother and sisters. She died on November 5, 1930, so that her life estate terminated. Mary C. Swing was executrix of her estate.

The persons included in the distribution under the adjudication of Lamorelle, P. J., and their respective shares, are those mentioned in the schedule of distribution A, annexed to the petition for distribution. Since the said adjudication, however, Rebecca S. Comly, otherwise Ruby Comly, one of the grandchildren, died, on October 15, 1928, in New Jersey, and Mary Comly and Woodbury Trust Company are executors of her will, to whom her share will be awarded on compliance with section fifty-eight of the Fiduciaries Act of 1917.

The question before the Auditing Judge is whether the present distribution shall be according to the letter of the deed of trust of Daniel F. Comly or according to the will of Samuel Comly. It, therefore, appears to me that I am virtually requested to reform the deed of trust in order that it may carry out what is alleged to be the real intention of the settlor. The facts are as above stated in detail. In fact, Daniel F. Comly acquired the title to the premises in consideration of $1100, paid by his father, William F. Comly, with the purpose of possessing the land for the benefit and advantage of the heirs of Samuel Comly under his will. The word "heirs" here is plainly equivalent to "devisees or persons beneficially interested," and it clearly appears that Daniel F. Comly in the deed of trust restricted the persons so mentioned to the grandchildren of Samuel Comly then *in esse*, whereas the will of Samuel Comly expressly included grandchildren "now born [*i. e.*, at the date of his will in 1855] or may be born hereafter." I am of opinion that the deed of trust was erroneously drawn in this respect, being contrary to the intention clearly expressed in the instrument itself, and it will be noticed that the deed of trust states that the land was to be subject "to the rights and privileges of Rebecca Swing and Mary French, daughters of Samuel Comly, to use, occupy and enjoy the above described premises for and dur-

ing the lives of the said Rebecca Swing and Mary French and the survivor of them in accordance with the terms and conditions in said last will and testament of Samuel Comly." This clearly refers to the will of Samuel Comly, that the property should be held as an asylum or headquarters for all of his children until the demise of the last child. If a bill in equity had been filed in the court of common pleas, the deed would, in my opinion, have been reformed so as to carry out the real intention of the settlor.

The case is quite similar to Huss *v.* Morris, 63 Pa. 367, where a deed was reformed by substituting "grandchildren" for "heirs of my son." Sharswood, J., said: "Mistakes are sometimes so apparent on the face of an instrument that the courts will construe the instrument as it ought to have been drawn." This was followed in Stephens *v.* Rinehart, 72 Pa. 434, a case arising from the same facts. See, also, Morris *v.* Stephens, 46 Pa. 200, an earlier phase of the litigation.

The next question arising is one of jurisdiction. Has the orphans' court the right to reform this deed, or must the parties be sent to the common pleas? On this point also I have no doubt. Prior to the recent act of assembly of June 26, 1931, P. L. 1384, amending section nine of the Orphans' Court Act of 1917, it would seem that the court would have no jurisdiction whatever over deeds of trust *inter vivos.* But we have now jurisdiction over the settlement of accounts of trustees *inter vivos,* and, consequently, must construe the deed. If that cannot be done without reforming the instrument, I am of opinion that we have a right to do it, and, in fact, must do it, for otherwise I cannot award distribution. It would be a vain thing for this court to suspend distribution until the parties should file a bill in equity in the common pleas.

It is argued by Mr. Edwards, in support of schedule of distribution B, that the exact terms of the deed of trust must be followed, because, as it is said, this court, per Henderson, J., in Comly's Estate, 7 D. & C. 21, decided the question. This, however, was a petition by the trustees of the twenty-four-acre tract and the trustees of the six-acre tract for leave to sell both tracts together, under the Revised Price Act of 1917, and all that was decided by the court was that the two proceedings could not be joined in one petition. True it is that we said in that opinion: "The parties in interest are not identical," and this was true enough on the face of the petition, but if the deed of trust be now reformed, as it should be, the parties are identical, and, consequently, I am of opinion that this prior decision of the court affords no reason for withholding relief.

I, therefore, decide that distribution should be made under schedule A in the petition.

*George J. Edwards, Jr.,* for exceptant.

*Percy McGeorge* and *W. Horace Hepburn,* contra.

STEARNE, J., January 8, 1932.—This case involves the distribution of the proceeds of sale of an interest in real estate held by a trustee under a voluntary *inter vivos* declaration of trust. Jurisdiction over the subject matter was conferred upon this court by the Act of June 26, 1931, P. L. 1384, amending section nine of the Orphans' Court Act of 1917.

The Auditing Judge awarded the exceptant 1/15.43 (28/432) of such proceeds, whereas the exceptant claims to be entitled to 1/12th thereof.

The declaration of trust named exceptant as one of twelve persons as *cestui que trust,* and because of this fact he now maintains he is entitled to an undivided equal 1/12th share of the trust *res.* The Auditing Judge, however,

ruled that the named twelve persons took such proportionate shares thereof as was provided under the terms of the will of the grandfather of exceptant, the terms of such will, by necessary inference, if not actually, having become incorporated into the terms of the declaration of trust.

To comprehensively approach the legal problem presented by the exceptions, it is necessary to examine the record offered in evidence to discover the facts and circumstances as they existed at and prior to the execution and delivery of the declaration.

Samuel Comly, the grandfather of exceptant, owned a farm near Frankford, Philadelphia, of approximately thirty-one acres. The ground was composed of two contiguous pieces of land, one containing about twenty-four acres and the other about seven acres. The twenty-four-acre tract was inherited from Samuel's mother. As to the seven-acre tract, one-third thereof Samuel inherited from his father, and the remaining two-thirds he purchased from his father's heirs. Subsequently Samuel mortgaged the two-thirds interest in the seven-acre tract, and thereafter lost the same through foreclosure, such interest being purchased by one Perry. When Samuel died in 1866, he was possessed of the twenty-four-acre tract and an undivided one-third interest in the seven-acre tract. The two-thirds interest in the seven-acre tract was still owned by Perry or his heirs.

By the terms of Samuel's will, he devised his real estate "unto my grandchildren now born or may be born hereafter share and share alike," with provision for his surviving children for their lives and the life of the survivor. Such provision for surviving children (in 1930) amounted to a life estate in the land to his daughter, Mary P. Comly French, who survived until October 5, 1930. See Comly's Estate, 7 D. & C. 21, and adjudications of this court in the estate of Samuel Comly, deceased.

In 1893, Daniel F. Comly (a grandson of Samuel, so seized of a vested interest in his deceased grandfather Samuel's real estate, subject to the life estate) took title in his own name to the two-thirds interest in the seven-acre tract formerly owned by his grandfather, and which Samuel had subsequently lost by foreclosure. Daniel continued to hold title to this interest from 1893 to 1910 when, on February 11, 1910, he executed, and subsequently recorded, a voluntary deed of trust, a copy of which is attached to the adjudication, and which is the basis of the present litigation.

At this time, February 11, 1910, Rebecca and Mary, only surviving children of the life tenant, were still living, as were eleven grandchildren and one great-grandchild (the child of a deceased grandchild). It is to be observed, however, that while these twelve individuals were the sole parties in interest, subject to the life estates of the then two surviving children under Samuel's will, yet they did not inherit from their grandfather in twelve equal undivided shares. It would seem unnecessary here to recite the quantum of interest of each of the twelve individuals named in the declaration of trust as it then existed under the will of Samuel, their grandfather. Obviously, since Samuel at his death left surviving eight living children who were entitled to successive life estates, the last survivor of whom died in 1930, the deaths of children and the births and deaths of grandchildren from 1866, the date of testator's death, to 1910, the date of the declaration of trust, affected and until the death of the last child continued to affect the proportionate shares of such grandchildren or descendants. All of these proportions are carefully fixed in previous adjudications of this court in the estate of Samuel Comly. It is again emphasized, however, that in 1910 the parties in interest under the will did not inherit in 1/12th shares under their grandfather's will.

The declaration of trust recites that when Daniel purchased the two-thirds interest in the seven-acre tract in 1893, Daniel's father, William, had paid the $1100, consideration money therefor, and that the object of the purchase was "the purpose of preserving said lot of ground for the benefit and advantage of the heirs of said Samuel Comly under the provisions of his last will and testament dated February 24, 1855." Daniel F. Comly then declares that, in consideration of the premises and of one dollar, he the said Daniel F. Comly held the land in trust for the benefit and advantage of the twelve individuals above named, subject to all existing encumbrances and subject to the rights of the then two surviving daughters, who were life tenants "in accordance with the terms and conditions in said last will and testament of said Samuel Comly mentioned and declared as respects the provisions in said last will and testament described and referred to."

It is most apparent that the scheme of Daniel F. Comly in acquiring the interest in the seven-acre tract which his grandfather had lost by foreclosure in his lifetime and in making a voluntary declaration of trust, was to restore to the Comly grandchildren the undivided interest which had theretofore been lost to the estate. The manifest and expressed intention was to place the twenty-four acres and the seven acres in identical ownership, to wit, the owners and beneficiaries in the estate of Samuel Comly, deceased.

The question, therefore, resolves itself to this: Can the intent of the maker of this declaration of trust, so indelibly expressed, be given effect by the terms of the instrument which he executed?

The Auditing Judge ruled that while perhaps the letter of the declaration of trust would preclude distribution to "devisees or persons beneficially interested" under the will of Samuel Comly because of its erroneous drafting, yet the words of the instrument were such as to disclose such intent that the instrument would be reformed. We are clear that if, in order to effectuate and correct distribution under an *inter vivos* trust, it becomes necessary to reform an instrument, this court has both the equity power and jurisdiction to so do. Abundant authority exists for such procedure, which the Auditing Judge cites, and which we will not repeat.

We are of opinion that even without reformation the Auditing Judge, as chancellor, was entitled to construe the meaning of this instrument. Like any deed, the terms thereof and the intent of the parties are the subject of construction by a court of competent jurisdiction. See 18 C. J. 251 *et seq.* The declaration of trust was at best most crudely drawn. The recital and grant do not precisely coincide. For example, while the recital of the consideration paid and the necessity for its repayment is in the recital, yet nothing concerning it is mentioned in the grant. That it was intended that this consideration should be repaid, and was so understood, is shown by the act of the parties in making repayment to Daniel, with interest. Also, we are not at all sure that the words "in accordance with the terms and conditions in said last will and testament of Samuel Comly mentioned and declared as respecting the premises in said last will and testament described and referred to" do not apply to *all* preceding subject matter in the *habendum* and are not limited to the life estates only, as a strict grammatical construction of the sentence would seem to require. In other words, reading the instrument from its four corners, and in the light of all the surrounding facts and circumstances of this record, we are of opinion that the declaration of trust vests in the twelve parties named in the declaration of trust only such shares and in such proportions as they took as beneficiaries under their grandfather's will. This, in our opinion, is the plain intent and effect of the declaration.

We again further wish to emphasize, in so construing or reforming the declaration of trust, that we are not now adding new parties or new terms. We decide that the twelve persons who are named in the declaration of trust did not take equal 1/12th shares, and it was not intended they should, but that the said twelve individuals took for themselves and their descendants in accordance with the terms of the will of their grandfather, and for the reasons specified in the declaration itself.

Being unanimously of opinion that the Auditing Judge correctly ruled the question, all exceptions are dismissed and the adjudication is confirmed absolutely.