## La Rocca Trust.

634

Argued April 22, 1963. Before BELL, C. J., MUS-MANNO, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Richard H. Knox,* for appellant.

*Samuel H. High, Jr.,* for appellee.

OPINION BY MR. JUSTICE EAGEN, July 2, 1963:

This is an appeal from a decree in the court below, which 1) refused to issue a citation upon a trustee to file an account and to make distribution of trust income to a minor beneficiary in accordance with a deed of trust; 2) granted reformation of the trust instrument.

The settlor and self appointed trustee, Joe La Rocca, on February 1, 1954, accepted a deed of trust from Salvatore Varino, and Delphine Varino, his wife, by which the grantors conveyed to him certain real estate in Willow Grove, Montgomery County, Pennsylvania. The trust instrument provided in pertinent part as follows: "In Trust to collect and receive rent and income from premises above described as the same shall from time to time accrue and to pay and apply the

same for the support, maintenance and education of the said Julius La Rocca, born December 19, 1952, until he shall attain the full age of twenty-one (21) years, . . . And after the arrival of the said minor, Julius La Rocca, at the age of twenty-one (21) years, *In Trust* to convey such premises or such estate unto him, the said Julius La Rocca absolutely, in fee. . . ."

The specified beneficiary, presently ten years of age, is the trustee's grandson. No account having been filed or income of the trust distributed, a petition for a citation was filed on June 7, 1961, in the Orphans' Court of Montgomery County on behalf of the minor beneficiary by his mother as natural guardian.

The trustee subsequently filed a complaint in equity in the Court of Common Pleas of Montgomery County seeking reformation of the trust instrument. He also filed an answer to the petition for the citation in the orphans' court, 1) questioning the jurisdiction of that court, and 2) denying the right of the petitioner to an accounting and distribution because the trust instrument did not contain the true and correct provisions he intended and directed to be included therein.

The orphans' court overruled the jurisdictional objection, proceeded to hearing and entered the decree appealed from.

The court was correct in entertaining jurisdiction of the issue, however, it erred in decreeing reformation of the deed of trust as the evidence was legally insufficient to warrant such action.

As a general rule, the jurisdiction of litigation involving the reformation of written instruments is in the court of common pleas sitting in equity. However, the basic issue herein is the right of the petitioner to an accounting and distribution of the income of a trust inter vivos. The orphans' court has *exclusive* jurisdiction of the administration and distribution of the property of an inter vivos trust under Section 301

of the Act of August 10, 1951, P. L. 1163, 20 P.S. §2080.301. The question of the reformation of the instrument involved was brought into the present action by way of answer to the petition for a citation to compel the accounting and distribution. So too, the action in equity in the common pleas court was not filed until after the jurisdiction of the orphans' court had attached herein. The request for reformation was not an indepedent action in the orphans' court, but rather an incidental one. The crucial test in evaluating jurisdiction is the relief requested by the initiating party. Section 304 of the Act of 1951, supra, provides that, "the orphans' court shall have all legal and equitable powers required for or incidental to the exercise of its jurisdiction." We agree with the lower court that it would be a vain act for the orphans' court to suspend action of the petition for an accounting and distribution until the reformation question was settled in another court. Such action would be unfair and tend to the inefficient administration of justice.

In *Mellinger's Estate,* 344 Pa. 180, 5 A. 2d 321 (1939), at 186, we stated, "While we have said on numerous occasions that the Orphans' Court is one of limited jurisdiction conferred entirely by statute . . ., nevertheless, when that court thus obtains jurisdiction over a subject matter, it should apply the rules and principles of equity, and thus dispose of an incidental question of reformation as raised in the instant case." See also, *Comly's Estate,* 16 Pa. D. & C. 336 (1932). The case of *Mains's Estate,* 322 Pa. 243, 185 A. 222 (1936), is materially distinguishable. Therein the party *initiating* the action was requesting equitable relief in the orphans' court in an estate of trust *not otherwise before the court.*

We, therefore, conclude that under the circumstances, the orphans' court was the proper forum.

The trust instrument provided that the rent and income from the trust property should be applied for

the support, maintenance and education of the minor beneficiary until he attained the age of twenty-one years, and that the trust property should vest in fee in the beneficiary when he reached the age of twenty-one years, or upon the death of the settlor or successor trustee. At the time of the delivery of the deed, the real estate was improved with a small dwelling. Subsequently in 1958, this building was torn down and a commercial building, purportedly costing $26,000 was erected thereon. The gross rentals are now $300 monthly. The consideration for the conveyance of the trust property was paid by the settlor. He also provided the money to pay the cost of the maintenance and improvements.

The parents of the beneficiary, Samuel and Maria La Rocca, were married in Italy in 1951. Upon coming to the United States in 1952, they took up residence with Joe La Rocca, the father of Samuel. Both husband and wife worked in the business of Joe La Rocca from 1952 to 1959. Julius was born on December 19, 1952, and lived in the home of his grandfather for many years. In 1958, Samuel and Maria separated and in 1961, Samuel returned to Italy.

The deed of trust was prepared by a real estate agent and the instructions for the preparation were given by Joe La Rocca to a title officer of the Jenkintown office of the Land Title Insurance Company (Now the Commonwealth Land Title Insurance Company), in whose offices the real estate settlement was consummated. The deed was executed on February 1, 1954, recorded on February 4, 1954, and then delivered to the possession of Joseph La Rocca. In the answer to the petition for the citation, the trustee admitted the existence of the deed and the terms thereof. However, he contended that the trust instrument did not comply with his intention at the time of the creation of the trust, because it did not include

therein provisions *entitling him* to receive the income from the trust property for his own personal benefit during his lifetime and also failed to give him the power of revocation. He averred that these important provisions were mistakenly omitted from the instrument. After hearing, the orphans' court sustained his position in one respect, namely, that the instrument should be reformed to permit the trustee to receive the income of the trust property until his death, or until the beneficiary reached the age of twenty-one years. It is this action, we now review.

It is well settled in this state that the mistake of a scrivener in preparing a deed or other writing may be established by parol evidence, and the instrument reformed accordingly: *Huss v. Morris*, 63 Pa. 367 (1870); *Roberts v. Roesch*, 306 Pa. 435, 159 A. 870 (1932); *Allinger v. Melvin*, 315 Pa. 298, 172 A. 712 (1934); *Bugen v. N. Y. Life Ins. Co.*, 408 Pa. 472, 184 A. 2d 499 (1962). However, the evidence required to reform a written instrument must be clear, precise, convincing, and of the most satisfactory character: *Easton v. Washington County Ins. Co.*, 391 Pa. 28, 137 A. 2d 332 (1957); *Bugen v. N. Y. Life Ins. Co.*, supra; *Girsh Trust*, 410 Pa. 455, 189 A. 2d 852 (1963).

Generally, the mistake must be a mutual one: *Miller v. Houseworth*, 387 Pa. 346, 127 A. 2d 742 (1956); *Bugen v. N. Y. Life Ins. Co.*, supra. However, this rule does not apply, where as herein, the settlor receives no consideration for the creation of the trust. In such a case a unilateral mistake on the part of the settlor is sufficient, and it is immaterial that the beneficiary did not induce the mistake, or know of it or share in it. Scott on Trusts, §333.4; Restatement (2d), Trusts, §333; *Irish v. Irish*, 361 Pa. 410, 65 A. 2d 345 (1949); *Scholler Trust*, 403 Pa. 97, 169 A. 2d 554 (1961). However, this does not mean that the standard as to the quality of the proof required to establish

the existence of the mistake is relaxed. The proof that a mistake actually occurred in the execution of the instrument must still be established by evidence that is clear, precise, convincing and of the most satisfactory character. For an analogous situation, see *Pender v. Cook*, 300 Pa. 468, 150 A. 892 (1930). See also, Restatement (2d), Trusts, §332, comments b and c. Any other rule would do havoc to the status of many irrevocable trusts now in existence.

In *Scholler Trusts* and *Irish v. Irish*, supra, reformation of trust instruments was approved. In these cases the reformation consisted of amendments or additions to the existing terms of instruments involved, and it was proven that the intent of the settlor would be thwarted if the reforms were not permitted in each case. The amendments presented problems concerning contingencies which were determined to have been unanticipated by the settlors at the time of the creation of the trusts. It is significant that in neither case did the reformations substantially eliminate any operative provision of the trust instruments.

In *Broida v. Travelers Ins. Co.*, 316 Pa. 444, 175 A. 492 (1934), at 448, in describing the meaning of the phrase, "clear, precise and convincing," we stated, "the witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue . . . It is not necessary that the evidence be uncontradicted [citing cases], provided it 'carries conviction to the mind' (Burt v. Burt, supra,) or 'carries a clear conviction of its truth'. . . ." It is true that "where an auditing judge sees and hears the witnesses, it is for him to determine their credibility and the weight to be given to their testimony be-

cause of their character, intelligence and knowledge of the subject, and his findings, like those of a jury, will not be disturbed except for clear error." *Harbison Estate,* 365 Pa. 468, 76 A. 2d 187 (1950). But it is also the law that where a trial judge passes upon the question of whether the evidence introduced to reform a written instrument meets the standard of being clear, precise and convincing his ruling is open to review here: *Broida v. Travelers Ins. Co.,* supra, and cases cited therein. See also, *Girsh Trust,* supra.

It should be further noted that the fact that the settlor now wishes to change the provisions of the trust is no ground for setting it aside: *Jones's Trust Estate,* 284 Pa. 90, 130 A. 314 (1925). Further, once an inter vivos gift is complete, it cannot be revoked without the consent of the donee: *Thompson v. Curwensville Water Co.,* 400 Pa. 380, 162 A. 2d 198 (1960).

In the present case, the finding of the court that a mistake had occurred in the preparation of the trust instrument was based solely upon the testimony of the settlor. It was not substantiated by any of the disinterested parties present at the time of its execution, or by the trust officer who received the instructions in regard to its preparation. A study of the settlor's testimony manifests that it was legally insufficient to sustain the reformation.

The lower court in its opinion gave weight to the following testimony of Joe La Rocca: "Well, I tell him put him in Julius' name, soon he be twenty-one years old, because I too old. I don't need no money by time he would be twenty-one. I would be about eighty years old. I think I don't need it no more." Further on in the trial record, with the court questioning the witness, he said, "No, I collect the rent, only I put them in security for my grandchild because I got eight grandchild."

His testimony on direct examination also included contradictory statements as illustrated by the following questions and answers: "Q. Did you tell Mr. King or anyone there who was preparing the deed what was to be done with the rents or income you would get from the property? A. No, no, I'll take the rent up to twenty-one years old. I pay his expense and my future income, because I get old every day. I got no insurance. I got no policy like Mr. Kennedy want to give to all the pension. I got no pension because I get no security. See me and my wife, we got to live up on the rent." This answer indicates he intended at least some of the rental income would be applied for the expenses of Julius. Although, he testified that the reason Julius was not to get the property until age 21, was that the settlor had many debts to pay, it was brought out in the presentation of appellant's case that Joe La Rocca had substantial holdings in real estate and is not in financial difficulty.

Throughout the examination, he was evasive. He showed marked hostility toward the beneficiary's mother, to the extent that at one point the court said, "I don't want this on the record." The court further predicated its finding of mistake on the fact that Joe La Rocca could not read very well. He first testified, "I can't read," then he said, "I can't read very good." He did not say in answer to a direct question as to whether he could read the deed, that he could not read it. His answer to that question was unresponsive. Yet on direct examination, he read from several exhibits and understood them. If a party who can read will not read a deed put before him for execution, he is guilty of supine negligence, which is not the subject of protection either in equity or at law: *Miller v. Houseworth,* supra.

We have thoroughly read the record in this case and we are of the opinion that the testimony of Joe

La Rocca did not measure up to the standard required to reform a written instrument. He did not distinctly remember the details of the preparation of the deed, nor did he recite them in order. His testimony instead of being clear, direct, weighty and convincing was evasive and contradictory in itself. In his answer to the petition, the settlor averred that he intended that the trust instrument include a power of revocation. In his proof, no mention is made of this alleged mistake. His testimony does not carry "a clear conviction of its truth."

The court below attached great significance to the fact that an accounting and distribution had not been demanded earlier. But, this is understandable. The parents of the beneficiary separated, as noted before, in May 1959. Before the separation, with the age of the beneficiary an added factor, there was no need for the trust income for support purposes. As soon as the need occurred, the demand was made. Further, there was substantial testimony that the settlor on several occasions stated that he was saving the income for the future needs of the beneficiary.

Decree reversed, record remanded with directions to issue the citation prayed for. Costs to be paid out of the income of the trust.