## Catherwood Trust

282

*Clarence E. Hall* and *E. C. Kirk Hall*, for petitioners.
*William P. Wood*, for beneficiaries.

*Donald S. Cohan*, guardian and trustee ad litem.

BOLGER, J., March 14, 1968. — By an irrevocable deed of trust dated August 12, 1937, Louise D. Catherwood transferred certain assets to Cummins Catherwood and Henry E. L. Walker as trustees in trust, to pay the net income therefrom, upon terms and conditions not presently pertinent, to Charles Clifford Gordon Chaplin for his life, and upon his death pay the income equally to his mother, Mrs. Stanley Greenfield, and his sister, Zara Chaplin. The deed further provides:

"Upon the death of Charles while the husband of the Grantor, and the death of the survivor of his mother and sister, to pay the income to the children and issue of the deceased children of the Grantor share and share alike until Twenty-One Years after the death of the last surviving child of the Grantor, the children of deceased children to take their parent's share Per Stirpes; and should the Grantor die without children or issue of deceased children, then upon the termination of the life estates hereinabove created the Principal of the Trust shall be transferred to the Grantor's brother, Cummins . . ."

She further directed that if her brother be then deceased, the principal be distributed to his issue per stirpes; in default of such issue, she directed that principal be distributed to Louise Ireland Grimes, if living, or to her issue per stirpes if dead; and in default of the issue of Louise Ireland Grimes, she directed that principal be distributed to such hospitals and charitable institutions in or near the City of Philadelphia as the trustees may determine.

Henry E. L. Walker resigned as trustee on June 2, 1942, and was succeeded, in accordance with the terms of the deed, by the Pennsylvania Company for Insurances on Lives and Granting Annuities (now The First Pennsylvania Banking and Trust Company).

The fund presently accounted for was awarded to the trustees by the adjudication of Judge Lefever, dated June 13, 1957, confirmed absolutely thereafter.

This account was filed pursuant to an order of the court, per President Judge Klein, upon the presentation of a petition by the trustees with the consent and joinder of the settlor for reformation of the deed. It was also filed in order to present a claim (subsequently withdrawn) for the payment from principal of $700 to Fiduciary Counsel, Inc., for investment advice rendered to the trust over a one-year period; to present a petition for the discharge of Cummins Catherwood as cotrustee; and to present a petition for the appointment of Charles C. G. Chaplin and Charles L. Grimes as substituted cotrustees.

Louise Catherwood Chaplin, the settlor, and her husband, Charles C. G. Chaplin, the primary life tenant, survive. They have two children, Susan Forbes Chaplin and Gordon Waterman Chaplin, who are of age and sui juris. Gordon Waterman Chaplin has one minor daughter, Diana.

Mrs. Stanley Greenfield, a contingent life tenant, died March 1, 1964. Zara Chaplin, her daughter, and

the sister of Charles C. G. Chaplin, survives.

Cummins Catherwood survives. He has two children, Cummins Catherwood, Jr., and Tucker Catherwood Gresh, who are of age and sui juris. Tucker Catherwood Gresh has one minor child, Perry Catherwood Gresh.

Louise Ireland Grimes (now Ireland) survives. She has three adult, sui juris children, Charles L. Grimes, Lucy Lee Custis Grimes and Arline Grimes Heimert.

By decree of this court dated October 16, 1967, Donald S. Cohan, Esq., was appointed guardian ad litem for designated minors and trustee ad litem for all unborn or unascertained parties having a possible interest in remainder. In his report he approves the account as stated and recommends that it be confirmed. His views and positions with respect to the issues raised by the various petitions will be discussed with each issue.

A hearing was held on the merits of the petition to reform the deed, prior to the calling of the account for audit. In support of the petition, Clarence E. Hall, Esq., the scrivener, testified that he met with the settlor, Louise D. Catherwood (now Chaplin) in late July 1937, to discuss with her an estate plan with a view toward her forthcoming marriage to Charles C. G. Chaplin. At that time Mrs. Chaplin received "very substantial" income from trusts created by her parents, and had independent resources of approximately $600,000. Mr. Hall stated that, pursuant to her instructions, he prepared in rough four documents: a revocable trust of a portion of her assets from which she was to receive the income for life; an antenuptial agreement, a copy of which was introduced and received in evidence; a will; and the deed of trust now before the court.

The antenuptial agreement, executed by Louise D. Catherwood and Charles C. G. Chaplin, recites, inter

alia, that the parties were about to contract marriage, that they desired to fix the rights of each in the other's estate, that Charles released all rights and claims to her estate, and that Louise contemporaneously irrevocably transferred assets of a value of not less than $200,000 to named trustees to pay the income to Charles for his life, and upon his death to pay the income to his mother for her life, and to his sister for life, upon terms and conditions not now relevant. The agreement further states with respect to the trust, "the remainder to go to the children of Louise, if any, and their issue". A gift over in default of issue is then recited.

Mr. Hall testified that with respect to the trust for Mr. Chaplin, the specific provisions were discussed with the future Mrs. Chaplin. She indicated that upon the death of Mr. Chaplin, his mother and his sister, she desired that the income be paid to her children and their issue for as long as legally permissible, for the reason that they would be remaindermen of large trusts created by Mrs. Chaplin's parents. He further stated that she desired the principal be paid to the children and their issue at the expiration of the longest legally permissible period in the same proportion in which they had been receiving income, the distribution to be per stirpes and not per capita. Mr. Hall further stated that he was advised by Mrs. Chaplin that if at the death of the survivor of the named life tenants, or at some time prior to the expiration of the legally permissible period, there should be a failure of issue, it was her desire that the principal be distributed as above recited in the first paragraph of this adjudication. He stated that the deed, insofar as it pertains to the gift of principal over in default of the survival of the settlor's issue for the period described, properly conveys the settlor's intent.

Mr. Hall stated that Mrs. Chaplin was 31 years old at the time the estate plan was discussed, and that as far as he knew she had had no experience in business matters in general or in estate planning in particular. He testified that in preparing all of the documents he was pressured by lack of time. Mrs. Chaplin later testified that she had been abroad until one month prior to her wedding, and that all conferences concerning the four documents prepared by Mr. Hall and subsequently executed by Mrs. Chaplin took place in the month between her return to this country and the wedding. Both Mr. Hall and Mrs. Chaplin testified that she was busy with her wedding plans during this period.

The petition for reformation avers, and Mr. Hall testified, that the trust instrument fails to conform to the intention of the settlor in that it provides for payment of income to the issue of the settlor for a period longer than permissible under the common law rule against perpetuities, i.e., it directs that income be paid to the settlor's issue until 21 years after the death of her last surviving child. Mrs. Chaplin had no issue at the time of the creation of the trust. It further fails to conform to settlor's intention, in that it does not provide for the distribution of principal if, at termination, she is survived by issue.

Mr. Hall stated that the deficiencies of the deed first came to his attention in the spring of 1967, that neither he nor the settlor was previously aware of the problems involved, that he would not knowingly have drawn the instrument with the deficiencies above discussed in it, and that he would not have advised the settlor to execute the trust with the deficiencies in it.

Mr. Hall stated that the following language set forth in the petition would correct the trust instrument and make it conform to settlor's intention as it existed at the time of the deed's execution:

"Upon the death of Charles, while the husband of the Grantor, and the death of the survivor of his mother and sister, IN TRUST, to pay the income to the children and issue of deceased children of the Grantor living from time to time, per stirpes, until twenty-one years after the death of the last survivor of the Grantor, her husband, his mother and sister, whereupon the principal of the trust shall be paid to her then-living children and the issue of her then deceased children, per stirpes; and should the Grantor die without children or issue of deceased children or should there be no such children or issue of deceased children living at any time prior to the expiration of 21 years after the death of the survivor of the Grantor, her husband, his mother and sister, then, upon the last to occur of the termination of the life estates hereinabove created or upon the death of the last survivor of Grantor's issue prior to the expiration of such Twenty-one (21) year period, the Principal of the trust shall be transferred to the Grantor's brother, CUMMINS, and if CUMMINS shall have died without child or children or issue of deceased children, then the Principal of the Estate shall be paid to Louise Ireland Grimes, and if she be not living, to her children or issue of deceased children per stirpes; and if there be no child, children nor issue of deceased children of Louise Ireland Grimes then living, the Principal of the said Trust shall be transferred by the Trustees to such hospitals and charitable institutions in or near the City of Philadelphia as the Trustees may determine".

Mrs. Chaplin testified that it was her intention and desire that after the death of her husband and of her husband's mother and sister, the income be paid to her issue for a period as long as legally permissible and, at the expiration of that period, the principal be paid to her issue. She further stated that it was only

in the event that she was not survived by issue, or that, having been survived by issue, that issue failed to survive the period during which they were to receive income, that the principal was to be paid to Cummins Catherwood or to his issue and so forth, as discussed above in the first paragraph of this adjudication. She further stated she had had no previous experience in setting up an estate plan and that this was her first experience in such matters. She testified that it was only in the very recent past that she was made aware of the failure of the deed to comply with her intention, and that she was not aware of the problem until it was called to her attention by Mr. Hall.

Cummins Catherwood, Mrs. Chaplin's brother and a cotrustee, testified that he discussed Mrs. Chaplin's estate plan with her in private and in the presence of Mr. Hall, and that he understood from his conversations with her that her intention was what she and Mr. Hall had testified to. He stated that he read the deed at that time but was not cognizant of any failure on its part to conform to her intention, but that he relied upon the advice of counsel, as did his sister.

No evidence was presented by any party in opposition to the petition for reformation. On the contrary, all parties in interest who are sui juris have joined in and consented to the prayer thereof. The auditing judge was impressed by the candor of the witnesses.

I make the following findings of fact:

1. That the deed of trust which is sought to be reformed was part of an estate plan contemporaneously formulated by and for the settlor.

2. That at the time of the execution of the deed of trust, it was the settlor's intention that after the death of the survivor of the three named life tenants, income be paid to her issue for the longest legally permissible period.

3. That at the time of the execution of the deed of trust, it was the settlor's intention that upon the expiration of the longest legally permissible period during which income was to be paid to her issue the principal was to be distributed to her then living issue in the same proportions in which they had been receiving income.

4. That the deed of trust fails to conform to the settlor's intentions in that by providing for the payment of income to the issue of the settlor until 21 years after the death of the last surviving child of the settlor, it directs that income be paid to the settlor's issue for a period beyond that which is legally permissible.

5. That the deed of trust fails to conform to the settlor's intention in that it does not explicitly provide for the distribution of principal to the settlor's surviving issue upon expiration of the period during which such issue are to receive income.

6. That neither the settlor nor the scrivener of the deed of trust was aware of the failure of the deed to conform to her intentions until 1967.

7. That the failure of the deed of trust to conform to the settlor's intentions was the result of the scrivener's mistake.

8. That had the settlor been aware of the failure of the deed of trust to conform to her intentions, she would not have executed it.

Do these findings permit the reformation requested? The auditing judge is satisfied that they do.

In Duncan Trust, 426 Pa. 283 (1967), the Supreme Court, at page 288, characterized the following as "well-defined principles":

"(1) the mistake of a scrivener in preparing a deed, will or other writing may be established by parol evidence and the instrument reformed accordingly: Huss v. Morris, 63 Pa. 367 (1870); Bugen v. N. Y. Life Ins. Co., 408 Pa. 472, 184 A. 2d 499 (1962);

(2) while generally, the mistake must be mutual, the rule is otherwise where, as herein, the Settlor receives no consideration for the creation of a trust. 'In such a case, a unilateral mistake on the part of the settlor is sufficient, and it is immaterial that the beneficiary did not induce the mistake or know of it or share in it.'; La Rocca Trust, 411 Pa. 633, 639, 192 A. 2d 409 (1963); (3) whether the mistake be unilateral or bilateral, the quality of proof required to establish the existence of the mistake is the same; the proof of the mistake must be established by evidence that is 'clear, precise, convincing and of the most satisfactory character.' La Rocca, supra, at 640; Easton v. Washington County Insurance Co., 391 Pa. 28, 37, 137 A. 2d 332 (1957);"

The evidence presented indicated a unilateral mistake on the part of settlor and her scrivener. Evidence of unilateral mistake is sufficient to permit reformation in cases where transfers are made without consideration: La Rocca Trust, 411 Pa. 633 (1963). That the settlor made the transfer without consideration seems to be assumed by all the parties in interest. However, as stated by the guardian and trustee ad litem, "It would seem that the deed of trust was entered into as part of an overall property settlement made under this antenuptial agreement which was executed the same day as the deed". As stated above, by that antenuptial agreement Charles C. G. Chaplin released and disclaimed any interest in his future wife's estate, which action, of course, is legal consideration flowing to the settlor. Notwithstanding that the action of the settlor in conveying property in trust was supported by consideration, the auditing judge is of the opinion that the evidence adduced was sufficient to justify the reformation. The settlor created several sets of rights by her deed. She gave successive life estates to her prospective husband, his mother and his sister. These

were clearly bargained for, in return for the release and disclaimer of the inchoate rights which the forthcoming marriage would give him in her estate. It might be said that the interests given the settlor's issue were also bargained for. The proposed reformation does not affect the interests of Mrs. Chaplin's issue, because the proposed reformation will merely shorten the period during which that issue will receive income and will explicitly direct that at the expiration of the period, principal will then be distributed to that issue.

The contingent remainders to Cummins Catherwood and his line, to Louise Ireland Grimes and her line, or to the unnamed charities present a different set of circumstances. It does not appear to be, and it is difficult to envision, a situation in which such remainders would have been bargained for by Mr. Chaplin; the contingent remaindermen cannot be considered third-party beneficiaries of any contract, but rather the facts and circumstances disclose merely that the settlor made a gift unsupported by consideration in order to prevent the existence of a possibility of reverter in her estate. The proposed changes adversely affect these contingent remainders, but as to these interests the evidence adduced, i. e., evidence of unilateral mistake, was sufficient. Those interests which were bargained for and for which consideration passed are not adversely affected; those interests which are adversely affected are not supported by consideration, and as to them evidence of unilateral mistake is sufficient.

In Russell's Appeal, 75 Pa. 269 (1874), a woman contemplating marriage entered into an antenuptial agreement whereby, inter alia, she transferred irrevocably certain assets to a trustee upon certain terms and conditions. No provision was made for the contingency which, in fact, occurred, i. e., the death of

her husband prior to her own. The evidence showed that it was her intention that should that contingency occur, the trust was to terminate. Her petition to reform the deed to so provide was opposed by the parties who would take under it upon her death. The court found that "these collateral depositaries of her estate were mere volunteers in the fullest sense of the term. There was not a spark of consideration, and not a motive to provide for them, further than to specify persons into whose lap the estate should fall, after her husband's death surviving her". The court held that as to these parties, evidence of unilateral mistake was sufficient to establish the settlor's right to have the deed reformed.

The evidence presented in support of the petition was clear, precise and convincing. Mr. Hall testified that, as scrivener, he knew what Mrs. Chaplin desired for her issue, but that he chose inappropriate language to accomplish the purpose. It is clear that the language used with respect to the period during which income is presently to be paid to settlor's issue would be effective if the trust had been testamentary rather than inter vivos. The lives of settlor's children could then have been measuring lives for purposes of dealing with the rule against perpetuities. From the testimony of the scrivener, the settlor and her brother, corroborated by the general language of the contemporaneous antenuptial agreement, the auditing judge is satisfied that it was always the settlor's intention to have the remainder ultimately pass to her issue. The scrivener's testimony on this point is clear that the failure of the deed to make explicit provisions is the result of an oversight. Under the circumstances, it is difficult to ascertain how the evidence could be more direct, precise and convincing. In Pew v. Pew, 69 Montg. 335 (C. P. 1952), reformation of a deed of trust was permitted to correct a failure to provide for accumu-

lation of stock dividends. One of the factors deemed important by the court was that the scrivener, working under pressure in order to complete the gift prior to the effective date of the Federal gift tax laws, was in the process of preparing a number of trusts simultaneously.

The guardian and trustee ad litem, after a thorough discussion of the facts and the law, concludes that the proposed reformation is proper and is beneficial to all his wards in that it eliminates completely any possibility of reverter to the settlor's estate, and in that it strengthens the position of the more remote interests, since it will permit them to take both if the settlor dies without issue living and if she is not survived by issue at the end of the period during which income is to be paid to such issue.

I conclude, as a matter of law, that the evidence presented was sufficient to entitle the petitioners to the relief which they seek. Therefore, by decree bearing even date herewith, the deed is reformed nunc pro tunc by the substitution of the language set forth therein.

The petitions for the discharge of Cummins Catherwood as trustee and for the appointment of Charles C. G. Chaplin and Charles L. Grimes as successor co-trustees to serve with the corporate trustee present a different problem. The deed provides:

"In the event of the resignation, death, disability or inability of either of the Trustees herein named to perform the duties imposed upon them, then and in such event the Grantor nominates and appoints the Pennsylvania Company for Insurances on Lives and Granting Annuities, of the City of Philadelphia, Successor Trustee, and in the event of the death of both of the Trustees herein named, the Grantor retains the right to nominate and appoint an individual trustee to serve with the Pennsylvania Company for Insurances on

Lives and Granting Annuities aforesaid".

It is clear that the above language does not explicitly permit the appointment of two individual cotrustees in the place of the one resigning. All sui juris parties in interest have joined in and consented to these petitions. The guardian and trustee ad litem has interposed no objection, for the reason that he knows of no facts which indicate that, if the discharge and appointments were made, his wards would be prejudiced in any way. The proposed successor cotrustees have waived all commissions.

Section 901 of the Fiduciaries Act of April 18, 1949, P. L. 512, provides:

"The court, after such notice to parties in interest as it shall direct, may appoint a trustee to fill a vacancy in the office of trustee, subject to the provisions, if any, of the trust instrument".

Scott states that "the court . . . may in the exercise of a sound discretion appoint an additional trustee, even though there is no vacancy, where such appointment appears to be conducive to the better administration of the trust": Scott, Trusts §108.2. See also Bogert Trusts, §532; Restatement of Trusts 2d §108, comment e.

In Ranck Estate, 381 Pa. 332 (1955), the action of the orphans' court in appointing as substituted cotrustees a corporate fiduciary and an individual was affirmed. The petition was filed pursuant to the Banking Code of May 15, 1933, P. L. 624, sec. 1410, as amended, 7 PS §819-1410, after the existing corporate trustee had merged with the Philadelphia National Bank. Objection was made on the ground that the Banking Code contained no provision for the appointment of an individual cofiduciary along with a substituted corporate fiduciary. The Supreme Court stated:

"The language of the Code, while not clear, would seem to sustain this contention. However, the Orphans'

Court has the right and power, unless the will or other pertinent instrument provides otherwise, to appoint an individual trustee or individual co-trustee. See Fiduciaries Act, April 18, 1949, P. L. 512, §901, 20 PS §320.901; Orphans' Court Act, August 10, 1951, P. L. 1163, 20 PS §2080.301; Stolzenbach's Estate, 346 Pa. 74, 29 A.2d 6".

In Gilbert v. Wise, 78 N. Y. S. 2d 533 (Sup. Ct. 1948), additional trustees were appointed, in the absence of specific statutory authority, where it appeared that adequate provisions were made to safeguard the trust.

The auditing judge is satisfied that the trust will not be adversely affected by the appointment of the substituted cotrustees. Therefore, by decree bearing even date herewith, Cummins Catherwood is discharged as cotrustee, conditioned upon the absolute confirmation of the account in due course. Also by decree bearing even date herewith, Charles C. G. Chaplin and Charles L. Grimes are appointed substituted cotrustees. . . .

And now, March 14, 1968, the account is confirmed nisi.