## Marciano v. Perrine

*Richard E. Deetz*, for plaintiffs.
*Bernard M. Billick*, for defendants.

WILLIAMS, P. J., September 12, 1974.—Plaintiffs instituted a suit in equity seeking reformation of a deed. The complaint alleges that through a mutual mistake of fact, the deed included a lot of land not intended by the parties to be conveyed by the deed.

The parties, in April 1969, executed a written contract prepared by counsel, who acted at the request of the wife-plaintiff but who subsequently, with the knowledge and consent of the parties, represented both parties to the transaction. The agreement

designated the land to be sold as Lots Nos. 2 and 4 on Map of Lands of Luther Van Why, Jr. It is undisputed that a dwelling is located on Lot No. 2, while Lot No. 4 is vacant. The two lots do not adjoin. They are separated by an intervening lot. The deed executed in pursuance of the agreement, conveys both lots. Plaintiffs contend that both parties intended only Lot No. 2 be conveyed; that Lot No. 4 was included through the mistake of the attorney who prepared the deed.

On the contrary, defendants contend that, in the oral negotiations which preceded the execution of the agreement, it was agreed they were to purchase both lots.

The evidence shows that counsel prepared the agreement of sale, mailed it to defendants at their New Jersey residence, who signed it and delivered it to plaintiffs, who likewise signed it.

Plaintiffs, to sustain their burden of proof, claim that the wife-plaintiff advised the wife-defendant in a conversation at the beginning of oral negotiations that only Lot No. 2 was to be included in the sale; that she and her husband hoped later to build a dwelling on Lot No. 4. The wife-defendant denies this and testified that after the closing the parties went to the premises and at that time the wife-plaintiff stated that defendants hoped at some time to build again in the area of the land sold, but did not designate the location.

Defendants' son testified that he met the wife-plaintiff in a drug store in Rahway, N. J.; that she told him that plaintiffs wanted to sell their cabin and two lots in Pennsylvania and he should advise his mother in the event she was interested in purchasing. The son conveyed the conversation to his mother who later contacted the wife-plaintiff.

Plaintiffs further contend that in March 1970, the wife-defendant talked to her about receiving two tax bills; that later she came to her home, where it was discovered that the bill was for Lot No. 4; that both agreed that the bill should be paid by plaintiffs since Lot No. 4 was not intended to be included in the sale; that both the wife-plaintiff and wife-defendant went to the office of Edwin Krawitz, Esq., who represented the parties in the transaction to arrange a correction of the mistake. The wife-defendant denies this and asserts she never went to Mr. Krawitz's office. Mr. Krawitz testified he had no recollection of a conference with the two women in his office subsequent to the closing. There is also evidence that defendants offered the facilities of the cabin to plaintiffs if they built on Lot No. 4. Defendants deny this, saying that the offer did not relate to building on Lot No. 4; that no discussion of building on Lot No. 4 took place.

Both plaintiffs testified that they did not read either the deed or the agreement prior to signing them; that they relied on counsel to prepare them correctly. The wife-defendant testified that both plaintiffs did look at the deed and appeared to be reading it at the time of settlement.

Mr. Krawitz had practically no personal recollection of the transaction. His recollection appears to be that only Lot No. 2 was to be included in the sale, but he does not bolster his recollection with any supporting evidence.

## DISCUSSION

Plaintiffs both testified that they had not read either the agreement of sale or the deed prior to executing it. This testimony convicts them of supine negligence which is a bar to the relief they seek. In

La Rocca Trust, 411 Pa. 633, 642 (1963), the court stated:

"If a party who can read will not read a deed put before him for execution, he is guilty of supine negligence, which is not the subject of protection in equity or at law. Miller v. Houseworth [387 Pa. 346]."

The wife-defendant testified that both plaintiffs did, in fact, read the deed. If they did read the deed, the fact that it did convey both lots unmistakably appeared. As was said in Miller v. Houseworth 387 Pa. 346, 353, "it is quite inescapable that due vigilance on their part would have yielded timely discovery of the alleged error".

Plaintiffs are placed in a position where, under the law, accepting as true their testimony that they did not read the deed or agreement, they are barred by supine negligence. On the other hand, if they did read the deed, as testified to by the wife-defendant, they are barred by failure to observe the obvious fact that the deed did include both lots and to correct the mistake before settlement.

See also Bosler v. Sun Oil Company, et al, 325 Pa. 411, 421 (1937), where Mr. Justice Maxey said:

"The evidence in the present case was inadequate to sustain a finding that the mistake was mutual. If any existed, it is attributable only to Mrs. Birchall, the grantor. She had both the agreement and the deed before her for examination and she twice placed her assenting signature to these documents now sought to be impeached and corrected on the ground that they contained an error of which due vigilance on her part would have yielded timely discovery.

" 'If a party who can read . . . will not read a deed put before him for execution . . . he is guilty of supine negligence, which . . . is not the subject of protection

either in equity or at law': Waslee v. Rossman, supra, at page 231; Greenfield's Est., 14 Pa. 489, 496."

Moreover, the evidence adduced by plaintiffs does not meet the standard required to permit the reformation of a deed. In La Rocca Trust, supra, page 639, it was stated:

"It is well settled in this state that the mistake of a scrivener in preparing a deed or other writing may be established by parol evidence, and the instrument reformed accordingly: [cited cases omitted]. However, the evidence required to reform a written instrument must be clear, precise, convincing, and of the most satisfactory character: Easton v. Washington County Ins. Co., 391 Pa. 28, 137 A. 2d 332 (1957); Bugen v. N. Y. Life Ins. Co., supra; Girsh Trust, 410 Pa. 455, 189 A. 2d 852 (1963)".

The meaning of the words "clear, precise and convincing" was defined in Broida v. Travelers Ins. Co. 316 Pa. 444, 448 (1934).

" [T]he witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue . . . It is not necessary that the evidence be uncontradicted [citing cases], provided it 'carries conviction to the mind' (Burt v. Burt, supra), 'or carries a clear conviction of its truth'."

Here, we do not find plaintiffs' testimony meets the required standard. It is not so clear, precise and convincing that without hesitancy we can determine the truth of the precise facts in issue. The lack of recollection on the part of counsel that Mrs. Marciano and Mrs. Perrine did visit his office subsequent to

the settlement, at which visit Mrs. Perrine allegedly admitted a mistake had been made, and the further fact that counsel has no office record of such a visit clouds the testimony and prevents the court from determining, without hesitancy, that such a visit occurred. The evidence is further clouded in that the contents of two letters of Mr. Krawitz are contradictory, since one could be interpreted as indicating that Mrs. Perrine made an admission of a mistake to him, while the second indicates that Mrs. Marciano had told him that such admission of a mistake was made to her.

The most that can be said of the evidence is that it is a standoff. Plaintiffs' evidence is either denied or explained away by the evidence submitted by defendants.

We see no necessity of making findings of fact as to which witnesses accurately portrayed what actually happened. Taking plaintiffs' evidence at face value, it is insufficient to support a reformation of the deed for two reasons:

(a) It is not so clear, precise and convincing as to permit the court to find, without hesitancy, that it is true.

(b) Plaintiffs' own testimony shows that in failing to read the agreement of sale and deed, that they were guilty of supine negligence.

## CONCLUSIONS OF LAW

1. Plaintiffs' own evidence shows they were guilty of supine negligence.

2. The testimony is not sufficiently clear, precise and convincing to allow the court to find that due to a mutual mistake the deed should be reformed to conform to the intention of the parties.

## DECREE NISI

And now, September 12, 1974, the relief sought by plaintiffs is denied, and the complaint is dismissed. If no exceptions to this decree nisi are filed within 20 days, the prothonotary shall enter this decree as of course as the final decree of the court.

Each side shall pay their own counsel fees. Plaintiffs shall pay the record costs.