**In re John Edward HASAY, District Justice In and For Magisterial District 11–3–01.**

**No. 2 JD 95.**

Court of Judicial Discipline of Pennsylvania.

Aug. 3, 1995.
Order Dismissing Objections
Sept. 25, 1995.

Before BURNS, DePAUL, McGINLEY, DONOHUE, CASSEBAUM, JOHNSON and MAGARO, JJ.

### ORDER

PER CURIAM.

AND NOW, this 3rd day of August, 1995, based on the above conclusions of law, it is hereby ORDERED:

1. Pursuant to C.J.D.R.P. No. 503 (formerly Interim Rule of Procedure 26), the attached Opinion with findings of fact and conclusions of law is filed and shall be served on the Judicial Conduct Board and the Respondent.

2. Either party may file written Objections to the Court's findings of fact and conclusions of law within ten (10) days of the date of this Order. Said Objections shall

include the basis therefor and shall be served on the opposing party.

3. If no exceptions are filed, upon the expiration of the time period for filing Objections, this Court shall issue an Order dismissing the Board's Complaint.

BURNS and JOHNSON, JJ., dissent.

McCLOSKEY, P.J., did not participate in the consideration or disposition of this Decision.

## OPINION

CASSEBAUM, Judge.

On February 23, 1995, the Judicial Conduct Board (the "Board") filed a Complaint with this Court containing allegations in support of eighteen (18) counts of misconduct on the part of District Justice John Edward Hasay. The Board requested that this Court discipline Respondent Hasay, pursuant to Article V, Section 18(d)(1) of the Pennsylvania Constitution, for purportedly violating Rules 1, 2A, and 13 of the Rules of Conduct for District Justices, and Article V, Sections 17(b) and 18(d) of the Pennsylvania Constitution. After the disposition of numerous pretrial motions filed by both parties, trial was held on May 24, 1995. The Board presented the testimony of a number of witnesses, including the two women who were involved and various representatives of the Pennsylvania State Police, the transcript from the criminal trial that arose out of the incidents described in Part A of the Board's Complaint, the confiscated marijuana, and other documents. Respondent Hasay testified in his own behalf.

A summary of the three separate charges, as set forth in the Complaint and in the Board's testimony at trial is as follows: in Part A, the Board alleges that Respondent Hasay was at the Benton Hotel on the evening of January 6, 1991, drinking beer, dancing, and singing with other individuals, including an adult female. At about 5:00 a.m., Respondent and the adult female and others

left the Benton Hotel. The adult female entered Respondent's car, he drove away, and took her to his house some miles away, where he engaged in sexual activities, including intercourse, without her consent.

In Part B, the Board alleges that Respondent Hasay was in possession of 43 grams of marijuana, which the state police found in the course of executing a search warrant in conjunction with their investigation of the complaints made by the adult female arising out of the activities described in Part A.

Part C refers to an incident that occurred during the early morning hours of February 8, 1992. The Board alleges that Respondent and another male friend were returning home from a nearby American Legion Club. At approximately 2:00 a.m., they encountered a fourteen-year-old female who was walking along the rural country road. They stopped and picked her up. Respondent drove her to his residence and kept her there until after daylight, after which he took her to the house of a neighbor who lived across the street from her home.

The Board maintains that the Respondent's conduct in each of these instances constitutes a violation of the Constitution and/or the Rules of Conduct, as well as a violation of various enumerated provisions of the Crimes Code,[1] and thus subjects Respondent to the discipline of this Court.

Article V, Section 18(b)(5) of the Pennsylvania Constitution establishes the standards for the Board's burden of proof as follows:

The subject of the charges shall be presumed innocent in any proceeding before the court, and the board shall have the burden of proving the charges by clear and convincing evidence.

The Pennsylvania Supreme Court has defined clear and convincing evidence as such that

[t]he witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due

---

1. 18 Pa.C.S. Section 2903 (False Imprisonment), 18 Pa.C.S. Section 3125(1) (Aggravated Indecent Assault). 18 Pa.C.S. Section 3126(1) (Indecent Assault), 35 Pa.C.S. Section 780–113(a)(16) (Pos-

session of Marihuana), 18 Pa.C.S. Section 2904 (Interference With Custody of Children), and/or 18 Pa.C.S. Section 6301 (Corruption of Minors).

order, and that their testimony is so clear, direct, weighty, and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue ... It is not necessary that the evidence be uncontradicted ..., provided it 'carries a clear conviction to the mind' ... or carries 'a clear conviction of its truth ...'

*LaRocca Trust,* 411 Pa. 633, 640, 192 A.2d 409, 413 (1963).

■ In this case, the evidence presented to the Court must establish clearly and convincingly that Respondent Hasay's conduct constituted either

1. misconduct in office,

2. conduct which prejudices the proper administration of justice or brings the judicial office into disrepute,

3. a violation of the Rules Governing the Standards of Conduct of District Justices, or

4. a violation of the Crimes Code.

The Superior Court of Pennsylvania has defined "misconduct in office" as follows:

The common law crime of misconduct in office, variously called misbehavior, misfeasance or misdemeanor in office, means either the breach of a positive statutory duty or the performance by a public official of a discretionary act with an improper or corrupt motive.

*Commonwealth v. Green,* 205 Pa.Super. 539, 546, 211 A.2d 5, 9 (1965).

### Findings of Fact

1. Respondent, District Justice John Edward Hasay, is the duly elected Justice serving Magisterial District 11–3–01, which is located in Luzerne County, Pennsylvania, and encompasses the Townships of Huntingdon, Fairmount, Ross, Hunlock, Union, Salem and Nescopeck, and the Boroughs of Shickshinny, New Columbus and Nescopeck.

2. Respondent was appointed to this position on an interim basis in 1987, was elected to the office in the Fall of 1987, and re-elected to the office in the Fall of 1993.

### Part A

3. During the late evening and early morning hours of January 5–6, 1991, Respondent was at the Benton Hotel in Benton, Columbia County, Pennsylvania.

4. While at the hotel, he met an adult female, who was also at the hotel with her girlfriend.

5. The adult female, the Respondent, and other patrons were singing songs, dancing and drinking alcoholic beverages.

6. At approximately 5:00 a.m., the Respondent, the adult female, her girlfriend, and another male individual left the Benton Hotel and went to the hotel parking lot where their cars were located.

7. The adult female's girlfriend got into her car, along with the other male patron, and the adult female approached Respondent and asked to sit in his car.

8. The adult female got into Respondent's car, and after a few minutes, Respondent and the adult female drove to Respondent's house located in a rural area of Luzerne County, Pennsylvania.

9. Upon arriving at Respondent's· house, Respondent exited his vehicle, leaving the car running, and walked approximately 100 feet from the car to untie his dog. During this period, the adult female, sitting in the passenger seat, made no attempt to leave the premises by taking Respondent's vehicle.

10. Respondent and the adult female then went inside Respondent's house, wherein Respondent made coffee for the adult female, built a fire for her, and they sat talking for some time.

11. At Respondent's residence, both the adult female and Respondent engaged in oral and vaginal intercourse which was consensual; Respondent made no physical or verbal threats against the adult female.

12. At approximately 10:00 a.m. that morning, Respondent drove the adult female to her residence and dropped her off.

13. On February 10, 1991, Respondent was arrested for rape, involuntary deviate sexual intercourse, aggravated indecent assault, indecent assault, kidnapping and false

imprisonment, which charges arose out of the relationship with the adult female on January 6, 1991.

14. On October 22, 1993, Respondent was acquitted on all charges by a jury in Luzerne County, Pennsylvania.

## Part B

15. On February 10, 1991, the Pennsylvania State Police, pursuant to a search warrant, conducted a search of Respondent's home at RR# 1, Box 255–A, Benton, Fairmount Township, Luzerne County, Pennsylvania, which search arose out of the criminal charges relating to the adult female in Part A.

16. During the course of the execution of the search warrant, marijuana was found in a bedroom under Respondent's bed.

17. The marijuana was tied together at the root stems and was found lying on a round beer tray.

18. The search of Respondent's residence failed to reveal any drug paraphernalia for using the marijuana.

19. When the Pennsylvania State Police told Respondent of the discovery of the marijuana, Respondent stated to at least one of the officers present that the marijuana was given to him some years ago by some friends as a joke.

20. Contained within the beer tray where the marijuana was located was a receipt from the Pennsylvania Liquor Control Board dated June, 1984, showing the purchase of approximately five (5) bottles of alcoholic beverages.

21. The marijuana was given to Respondent in June of 1984 by a friend at a party at Respondent's house; Respondent took the marijuana and placed it in a beer tray which had also contained a receipt from the Pennsylvania Liquor Control Board showing the purchase of liquor for the party.

22. After the party, Respondent did not know what happened to the marijuana or the beer tray, and had never seen it again until the search of Respondent's residence on February 10, 1991.

23. Marijuana is a schedule I controlled substance as listed in 35 P.S. 780–104(1)(iv).

24. Respondent was not licensed or privileged to possess marijuana.

25. The marijuana seized weighed approximately 43.3 grams.

26. Respondent did not intentionally or knowingly possess the marijuana on February 10, 1991.

## Part C

27. Respondent lives alone at RR # 1, Box 255–A, Benton, Fairmount Township, Luzerne County, Pennsylvania.

28. On February 8, 1992, between 2:00 and 3:00 a.m., Respondent and a male friend were driving home together from a local American Legion Club located in Luzerne County, Pennsylvania.

29. At this approximate time, they found in a remote section of Luzerne County on State Route 4015, Fairmount Township, a fourteen-year-old female walking along that legislative route by herself.

30. Respondent and the male friend, who was driving the pick-up truck, pulled over and offered to take the minor female home.

31. The minor female got into the truck and was driven to Respondent's residence at RR # 1, Box 255–A, Benton, Fairmount Township, Luzerne County, Pennsylvania.

32. Upon arrival at Respondent's residence, Respondent and the minor female got into Respondent's vehicle, and he proceeded to drive approximately twelve (12) miles to Shickshinny, Pennsylvania, where she had told him her residence was located.

33. While traveling to Shickshinny, the minor female said that she wanted to be left at an Exxon Station outside of Shickshinny so that she could call her boyfriend.

34. The Exxon Station is located in a remote location of Luzerne County, Pennsylvania.

35. Respondent again questioned the minor female about where her mother was, and she responded that her mother was an alcoholic, and her father lived in Mountaintop.

36. Respondent refused to drop the minor female off at the Exxon Station and instead, returned her to his residence. She slept on a chair at Respondent's residence until approximately 8:00 a.m. that morning. Respondent slept on a couch across from her, and Respondent's father was in an upstairs bedroom.

37. At 8:00 a.m. in the morning, Respondent took the minor female to what he believed was the house of her grandmother. He dropped her off and waited outside until an adult came out and escorted the minor female into the residence. Respondent then left.

38. Respondent did not touch the minor female or make any sexual or improper advances towards her.

### Discussion

■ With respect to Part A, we conclude that the intimate sexual activities between Respondent and the adult female were consensual, and that the Board has not supported its allegations by clear and convincing evidence. Therefore, we conclude that the activities of the night of January 6–7, 1991, do not warrant discipline for violation of the Rules Governing Standards of Conduct for District Justices, the Pennsylvania Constitution, or the Crimes Code.

■ In regard to Part B, there is no dispute with respect to the factual allegations. Respondent Hasay acknowledges that indeed there was marijuana which the state police found under his bed, and he does not deny that marijuana weighed 43 grams. The dispute between the Board and the Respondent lies in the issue of whether the existence of the marijuana is adequate to conclude that Respondent Hasay possessed the marijuana.

Possession can be proven by showing actual possession, i.e. a controlled substance was found on the appellee's person, or by showing that the [person] constructively possessed the drug. Since the [marijuana] was found in the [Respondent's] bedroom, and not on his person, the [Board] had the burden of proving that he had constructive possession of the drug. Constructive possession has been defined

as the ability to exercise a conscious dominion over the illegal substance: the power to control the contraband and the intent to exercise that control. (citations omitted).

*Commonwealth v. Macolino*, 503 Pa. 201, 206, 469 A.2d 132, 134 (1983).

■ The testimony presented on this issue establishes to the satisfaction of the court that Respondent Hasay received the marijuana from a friend in the course of a party at his house in 1984. He placed the bag on a beer tray that was in use at the bar at that party, and the beer tray containing the marijuana and a receipt for the purchase of alcoholic beverages found its way to and remained under his bed.

The record reflects that Respondent Hasay was not a district magistrate in 1984, when he received the marijuana. He did not become a district justice until he was appointed in 1987, and by then he had long forgotten about the marijuana.

This Court is aware that it may infer that Respondent Hasay had the power and intent to control the marijuana because it was found in his bedroom, under his bed, and he lives alone. However, considering the totality of the circumstances, and the credibility of Respondent Hasay's testimony, the Court concludes that Respondent Hasay did not have the requisite intent to constructively possess the marijuana.

We conclude that the Board failed to prove by clear and convincing evidence that Respondent Hasay possessed the controlled substance during the period when he was serving as a judicial officer, and therefore, he did not violate Rules 1, 2A or 13 of the Rules of Conduct for District Justices.

■ Finally, with respect to Part C, the record reflects that on February 8, 1992, Respondent Hasay and a male friend picked up a fourteen-year-old female walking in rural Luzerne County between 2:00 and 3:00 a.m. At her request, Respondent agreed to take the minor female to Shickshinny, a neighboring town, and they began to drive there in his car. When she subsequently requested that he leave her at a telephone at a gas station at the outskirts of town, Re-

spondent refused, and took her back to his residence where the minor female fell asleep in the living room. Respondent Hasay testified credibly that he questioned the girl concerning the whereabouts of her parents, and she advised him that her father lived in Mountaintop and her mother was an alcoholic. The following morning, Respondent took her to what he believed to be her grandmother's house, a mile from where he lived.

Therefore, we conclude that this chain of events does not contain the elements of any of the crimes the Board has asserted that Respondent Hasay has committed,[2] nor does it violate the Rules Governing the Conduct of District Justices or the Pennsylvania Constitution.

### Conclusions of Law

1. The Judicial Conduct Board has authority under Article V, Section 18 of the Pennsylvania Constitution to file formal charges alleging ethical misconduct on the part of judges, justices, or justices of the peace, and to present the case in support of those charges before this Court.

2. This Court has jurisdiction over the subject matter of the Board's Complaint pursuant to Article V, Section 18(d)(2) of the Pennsylvania Constitution.

3. Respondent's actions do not constitute misconduct in office in violation of Article V, Section 18(d)(1) of the Pennsylvania Constitution.

4. Respondent's conduct did not prejudice the proper administration of justice or bring the judicial office into disrepute.

5. Respondent's conduct was not prohibited by law.

6. Respondent's actions did not constitute a violation of the Rules of Conduct for District Justices.

7. Respondent did not engage in an activity in violation of Article V, Section 17(b) of the Pennsylvania Constitution.

BURNS, J., files a dissenting opinion in which JOHNSON, J., joins.

McCLOSKEY, P.J., did not participate in the consideration or disposition of this decision.

BURNS, Judge, dissenting.

I respectfully dissent from the result reached in the Opinion of the Court, specifically relating to Part B of the Complaint filed by the Judicial Conduct Board. While I agree with the majority that the Board did not establish the charges contained in Parts A and C of the Complaint by clear and convincing evidence, I am persuaded that the Board has met its burden concerning the charge of possession of a controlled substance. Therefore, I would conclude that Respondent Hasay has not only conducted himself in a manner that has brought the judicial office into disrepute, he has also violated art. V, sec. 17(b) of the Pennsylvania Constitution.

The parties stipulated that the substance found at Respondent Hasay's residence was marijuana and that it was discovered in his bedroom. N.T., May 24, 1995, at 88. Not only did the Respondent advise Detective Walter F. Carlson that the marijuana was given to him by some friends as a joke, but he also stated that the marijuana was his. *Id.* at 101. Retired Pennsylvania State Trooper Charles W. Casey testified that the marijuana was discovered in an upstairs bedroom underneath a bed. *Id.* at 163. He further testified that there were no beds in the other rooms upstairs. *Id.*

Respondent Hasay testified on direct examination that he had put the marijuana on a bar tray behind the bar some seven years before, "and that was the last [he] had seen of it and the tray." *Id.* at 169. He acknowledged under oath that he picked it up and put it in the bar tray. *Id.* at 207. He admitted that it remained under his bed for almost seven years. *Id.* He knew it was illegal when it was brought into his home, *id.* at 208, and he admitted possessing it for seven years:

---

**2.** 18 Pa.C.S. Section 2903 (False Imprisonment), 18 Pa.C.S. Section 2904 (Interference with Custody of Children), and/or 18 Pa.C.S. Section 6301 (Corruption of Minors).

Q. [By Mr. Anthony, Asst. Board Counsel]: And you possessed this marijuana for seven years?

A. [By John Hasay]: That's correct.

N.T., May 24, 1995, at 208–09.

Our Supreme Court has defined constructive possession as "the ability to exercise a conscious dominion over the illegal substance: the power to control the contraband and the intent to exercise that control." *Commonwealth v. Macolino,* 503 Pa. 201, 206, 469 A.2d 132, 134 (1983). The intent to maintain a conscious dominion may be inferred from the totality of the circumstances, and circumstantial evidence may be used to establish a person's possession of drugs or contraband. *Id.* at 206, 469 A.2d at 134, *cited and followed in Commonwealth v. Valette,* 531 Pa. 384, 388, 613 A.2d 548, 550 (1992).

On the facts presented in the hearing before this Court, and taking into account the totality of the circumstances, I respectfully conclude that the evidence presented by the Board, when coupled with the admissions by the Respondent, was more than sufficient to support a finding that Respondent was guilty of possession [1] on either a standard of clear and convincing evidence or proof beyond a reasonable doubt.

I am thus of the opinion that Respondent engaged in activity prohibited by law, specifically 35 P.S. Section 780–113(a)(16) (possession of a controlled substance—marijuana), and that his disregard for the gravity of possessing a controlled substance not only manifests his disrespect for the significance of his judicial office, but has brought that office into disrepute.

With respect to this issue, I must therefore specifically dissent from Finding of Fact No. 26 in the Opinion of the Court: "Respondent did not intentionally or knowingly possess the marijuana on February 10, 1991." Initially, I believe this has been incorrectly identified as a finding of fact and appropriately should be designated a conclusion of law. As indicated above, I would reach the contrary conclusion.

Unfortunately, this is not the only matter in the Opinion of the Court with which I cannot agree. Respondent admitted in his testimony before this Court to heavy drinking associated with all three of the occurrences before us, all of which happened during the time he was either performing the duties of a district justice, or was suspended from such duties because of criminal prosecution. That heavy drinking clearly led to errors in judgment and personal conduct not in keeping with accepted community standards.

The Pennsylvania Constitution charges this Court to discipline a member of the judiciary of the Commonwealth for "conduct which ... brings the judicial office into disrepute whether or not the conduct occurred while acting in a judicial capacity or is prohibited by law...." Art. V., sec. 18(d)(1). I believe that this language in the new art. V, section 18 encompasses conduct which is far more "private" or personal than the old art. V, section 18.

In *In the Matter of Dalessandro,* 483 Pa. 431, 397 A.2d 743 (1979), an opinion which interpreted the old constitutional language relating to the discipline of judges, the judge had not been convicted of any criminal conduct, but he had engaged in arguably objectionable conduct. In reversing the Judicial Inquiry and Review Board's determination that the judge should be publicly censored, the Pennsylvania Supreme Court discussed the inappropriateness, under the old constitutional language, of "discipline based on conduct unrelated to a judge's official conduct which is not prohibited by the public policy of this Commonwealth as manifested in its laws." *Dalessandro,* 483 Pa. at 461, 397 A.2d at 758. I believe that the language in the new art. V, section 18(d) authorizing discipline "whether or not the conduct occurred while acting in a judicial capacity or is prohibited by law," which may have been drafted in specific response to this type of

[1]. I am of the opinion that this record establishes that Respondent possessed the marijuana. However, even if that stricter standard has not been met, Respondent clearly had constructive possession of the substance.

decision, broadens the disciplinary charge and obligation of this Court.

The testimony of the Respondent, together with the testimony of a number of witnesses, produced clear and convincing evidence that he committed indiscretions of personal conduct and errors in judgment and demonstrated a lack of personal control, even though the general charges of rape, kidnapping and the related crimes were not substantiated by clear and convincing evidence.

Even given the fact that (1) Respondent was not convicted by a criminal court of the charges relating to possession and non-consensual sexual conduct, and (2) the evidence to substantiate Parts A and C of the Board Complaint was not sufficient to convince the majority of this Court that the Respondent was guilty of the offenses charged, the pattern of conduct that was developed at trial before this Court leads me to believe that he held his office in contempt and brought the office into disrepute.

For the several reasons expressed above, I respectfully dissent from those portions of the Opinion which determine that the Respondent did not violate art. V, sec. 17(b) of the Pennsylvania Constitution, and that he did not bring the judicial office into disrepute.

JOHNSON, J., joins in dissent.

### ORDER

PER CURIAM.

AND NOW, this 25th day of September, 1995, upon consideration of the Objections filed by the Judicial Conduct Board to this Court's Order and Decision, dated August 3, 1995, in the above-captioned matter, this Court's findings of fact and conclusions of law are hereby affirmed, and the Board's Objections are dismissed.

McCLOSKEY, P.J., did not participate in the consideration or disposition of this Decision.